Received and Filed
08-1827
07/14/08
Marcia M. Waldron,
Clerk

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## No. 08-1827

---

## DIANE ROSETSKY
### Plaintiff/Appellant,

v.

## NATIONAL BOARD OF MEDICAL EXAMINERS
## OF THE UNITED STATES OF AMERICA, INC.
### Defendant/Appellee

---

## BRIEF OF PLAINTIFF/APPELLANT
## AND VOLUME I
## OF PLAINTIFF/APPELLANT'S APPENDIX
### (Pages 1a - 24a)

---

**An Appeal from the Order of Judgment entered
in the United States District Court
for the Eastern District of Pennsylvania
on February 19, 2008 at Civil Action No. 07-cv-03167**

---

**Timothy M. Kolman, Esquire
225 North Flowers Mill Road
Langhorne, PA 19047
(215) 750-3134
Attorney for Plaintiff/Appellant**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                            iii.

I.    JURISDICTIONAL STATEMENT                                  1.

II.   STATEMENT OF RELATED CASES AND PROCEEDINGS                3.

III.  STATEMENT OF ISSUES PRESENTED FOR REVIEW                  4.

IV.   SUMMARY OF ARGUMENT                                       5.

V.    STATEMENT OF THE CASE                                     6.

VI.   ARGUMENT                                                  17.

      I.    THE DISTRICT COURT ERRED
            IN GRANTING SUMMARY JUDGMENT
            TO DEFENDANT                                        17.

      a.    The Summary Judgment Standard                       17.

      b.    Plaintiff Has Established a *Prima Facie* Case
            of Age Discrimination                               19.

      c.    Defendant offered no legitimate, non-discriminatory
            reason to justify the reduction of Plaintiff's
            job responsibilities                                24.

      d.    Plaintiff established a *prima facie* claim for retaliation    25.

      e.    Plaintiff can demonstrate that Defendant's
            proffered reason for her termination is pretextual  29.

f.      As the Pennsylvania Human Relations
        Commission (PHRC) waived its right to
        conduct an investigation, Plaintiff did
        not fail to exhaust her administrative remedies          32.

g.      Plaintiff did not commit any fraud in her application    35.

h.      Plaintiff is entitled to damages for pain and suffering
        under the PHRA                                           36.

II.     THE DISTRICT COURT ABUSED ITS DISCRETION
        IN DENYING ADDITIONAL DISCOVERY                          36.

a.      The standard of review for decisions
        denying additional discovery                             36.

b.      The District Court's decisions on Plaintiff's
        Motion to Compel and Motion for Extension
        should be reversed                                       37.

VII.    CONCLUSION                                               40.

VOLUME I OF APPELLANT'S
APPENDIX                                    Appended to Brief

# TABLE OF AUTHORITIES

## **Statutes/Court Rules**

28 U.S.C. § 1331                                    1

28 U.S.C. § 1291                                    1, 2

29 U.S.C. § 623                                     19

43 P.S. § 959                                       36

Fed. R. App. P. 4                                   1

Fed. R. Civ. P. 56                                  17, 19

LAR 28.01                                           4

## **Case Authorities**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 106 S.Ct. 2505 (1986)                18

*Atkinson v. Lafayette College*
2002 U.S. Dist. LEXIS 1432 (E.D. Pa.)              34

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.,*
 974 F.2d 1358 (3d Cir. 1992)                       18
*cert. denied,* 507 U.S. 912, 113 S. Ct. 1262 (1993)

*Burlington Indus. Inc. v. Ellerth*
524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)    20

*Clark County School Dist. v. Breeden*
 532 U.S. 268, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)   27, 28

*Coolspring Stone Supply v. American States Life Ins. Co.*
10 F.3d 144 (3d Cir. 1993)                         17, 18

*Country Floors Inc. v. Gepner & Ford*
  930 F.2d 1056 (3d Cir. 1992)                                      37

*Eastman Kodak Co. v. Image Technological Services, Inc.*
  504 U.S. 451, 112 S.Ct. 2072 (1992)                          18, 32

*EEOC v. Avecia, Inc.*
  151 Fed.Appx. 162 (3d Cir. October 30th, 2005)                 25

*Eli Lilly & Co. v. Generix Drug Sales, Inc.*
  460 F.2d 1096 (5th Cir. 1972)                                 37, 38

*Esmonde v. TV Guide Magazine*
  1992 U.S. Dist. LEXIS 3912 (E.D. Pa.)                         33, 34

*Fuentes v. Perskie*
  32 F.3d 759 (3d Cir. 1994)                                       29

*Glanzman v. Metropolitan Management Corp.*
  290 F. Supp. 2d 571 (E.D. Pa. 2003)                           20, 21

*Haugh v. Allstate Ins. Co.,*
  2003 U.S. App. LEXIS 3721 (3d Cir. February 28, 2003)          17

*In re Fine Antitrust Litig.*
  685 F.2d 810 (3d Cir. 1982)                                 37, 38, 39

*Jalil v. Avdel Corp.*
  873 F.2d 701 (3d Cir. 1989)                                     27

*Jones v. City of Wilmington*
  299 F. Supp.2d 380 (D. Del. 2004)                               24

*Kozlowski v. Extendedicare Health Services*
  2000 U.S. Dist. LEXIS 1493 (E.D. Pa.)                           34

*Lantz v. Hospital of the University of Pennsylvania*
  1996 U.S. Dist. LEXIS 11154 (E.D. PA.)                          34

*Lauren W. v. DeFlaminis*
480 F.3d 259 (3d Cir. 2007)                                    28

*LeBoon v. Lancaster Jewish Community Center Ass'n*
503 F.3d 217 (3d Cir. 2007)                                    27

*Lula v. Network Appliance*
2007 U.S. App. LEXIS 25901 (3d Cir. 2007)                      19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
475 U.S. 574, 106 S. Ct. 1348 (1986)                           18

*McBride v. Bell of Pennsylvania*
1989 U.S. Dist. LEXIS 7177 (E.D. Pa.)                          33

*McDonnell Douglas Corp. v. Green*
411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)         24

*McGovern v. Jack D's, Inc.*
2004 U.S. Dist. LEXIS 1985 (E.D. Pa.)                          33

*Moore v. City of Philadelphia*
461 F.3d 331 (3d Cir. 2006)                                    26, 27

*Northview Motors, Inc. v. Chrysler Motors Corp.*
227 F.3d 78 (3d Cir. 2000)                                     17

*Padgett v. Y.M.C.A.*
1998 U.S. Dist. LEXIS 18693 (E.D. Pa.)                         33

*Parker v. Phila. Newspapers, Inc.*
322 F. Supp. 2d 624 (E.D. Pa. 2004)                            27

*Peters v. Air Products & Chemicals, Inc.*
2006 U.S. Dist. LEXIS 15330 (E.D. Pa. 2006)                    25

*Reid v. Kraft General Foods*
1995 U.S. Dist. LEXIS 5595 (E.D. Pa.)                          33

*Schweitzer v. Rockwell Int'l*
402 Pa. Super. 34, 586 A.2d 383 (Pa, Super. 1990)                    34


*Smith v. Thomas Jefferson University*
2006 U.S. Dist. LEXIS 45079 (E.D. Pa. 2006)                    23

*Weston v. Pennsylvania*
251 F.3d 420, 430-431 (3rd Cir. 2001)                    20

_____

# I.    JURISDICTIONAL STATEMENT

### a.    Basis for District Court's Jurisdiction

The United States District Court for the Eastern District of Pennsylvania properly exercised subject-matter jurisdiction over the instant age discrimination and retaliation matter pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction) because the action arose under a law of the United States (specifically, the Age Discrimination in Employment Act).

### b.    Basis for Court of Appeals' Jurisdiction

The United States Court of Appeals for the Third Circuit may properly exercise jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291 (final decisions of District Courts) because the Order dismissing the instant action disposed of all claims of the parties and is properly considered "final" and appealable for purposes of 28 U.S.C. § 1291.

### c.    Timeliness of Appeal

The instant appeal is timely because it was filed within thirty (30) days of the District Court's entry of the Order dismissing this case, as required by Fed. R. App. P. 4(a).    The Order of dismissal was docketed on February 19th, 2008. Plaintiff's notice of appeal was filed on March 19th, 2008.

### d.   <u>Finality</u>

The instant appeal is from a final order/judgment disposing of all the parties'

claims. *See* 28 U.S.C. § 1291.

## II.    STATEMENT OF RELATED CASES AND PROCEEDINGS

None.

## III.  STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  Whether the District Court erred in entering summary judgment on Plaintiff's age discrimination and retaliation claims and in dismissing Plaintiff's Complaint.

    Suggested Answer:  Yes.

    Pursuant to LAR 28.01, Plaintiff asserts that this issue was preserved by her opposition to Defendant's motion for summary judgment and that no further preservation of this issue was necessary.

2.  Whether the District Court erred in denying Plaintiff additional time for discovery and her motion to compel depositions.

    Suggested Answer:  Yes.

    Pursuant to LAR 28.01, Plaintiff asserts that this issue was preserved by her filing of a motion for additional discovery and a motion to compel and that no further preservation of this issue was necessary.

## IV.  SUMMARY OF ARGUMENT

The District Court erred in granting Defendant's motion for summary judgment and in dismissing Plaintiff's claims against Defendant because genuine issues of material fact remained to be decided thereon.  Plaintiff's age discrimination claim should not have been dismissed because she established facts sufficient to demonstrate that she was terminated under circumstances giving rise to an inference of age discrimination.  She was assigned clerical work not in her job description while younger employees were advanced ahead of her.  Plaintiff's retaliation claim should not have been dismissed because Plaintiff adduced sufficient evidence of causation utilizing temporal proximity (she was fired only 11 days after making her latest age discrimination complaint) and evidence of ongoing antagonism.  Plaintiff's termination letter referenced the very communications in which she had complained of discrimination as a basis for her dismissal.  Defendant's assertion that after-acquired evidence of misstatements on Plaintiff's job application justified her termination after the fact must fail because Plaintiff testified that the information she gave Defendant about her prior job termination was truthful.

The District Court also erred in denying Plaintiff's Motion to Compel and her Motion for Extension of the two-month discovery deadline because Plaintiff has shown that she was prejudiced by those denials.

# V.    STATEMENT OF THE CASE

The instant action seeks redress for age discrimination, retaliation, and other violations by Defendant of the Age Discrimination in Employment Act and other applicable federal and state law.

Plaintiff was 47 years of age at the time she was first employed with Defendant. 89a (Paragraph 13). Plaintiff was initially employed by Defendant in the position of temporary "Test and Development Associate I" on September 27, 2005. 87a (Paragraph 1); *see also* 142a – 143a (Plaintiff's letter of hire). Plaintiff accepted a full-time position with Defendant as a "Test Development Program Assistant" effective December 19, 2005. 87a (Paragraph 3); *see also* 148a – 149a (Letter of Permanent Hire).

Defendant provides its employees with documents known as "role profiles" (these are essentially job descriptions outlining the duties of a particular position). The role profile for Plaintiff's initial position as a temporary Test Development Associate I identifies the following tasks:

> a. Creates, updates, and/or disseminates documentation for new and existing technological procedures and routines; includes direct user support and training.
>
> b. Designs and incorporates interactive help features including wizards (smart guides), help screens, FAQ's, and tips and tricks making applications more user friendly.

    c. Assists with examination production of assigned programs; translation of items for international examinations, CBT and web-based examinations, ATA, resources files, paper and pencil publishing, and pictorial production.

    d. Works with staff across units to create and disseminate TD program plans.

    e. Assists in cataloging multimedia for use in test questions.

    f. Assists in creating and cataloging slides for presentations and workshops.

    g. Assist with other duties as assigned.

482a-483a.

Defendant has claimed Plaintiff was expected to perform clerical tasks in support of her supervisor, but Defendant has pointed to no facts of record supporting this allegation. The foregoing role profile given to Plaintiff does not contain any reference to clerical tasks.

Plaintiff also testified that she was never given the opportunity to assist with examination production; translation of items for international examinations, CBT and web-based exams; that she was never permitted to create slides, only to organize them for her supervisor (Kathy Holtzman). *See* 524a – 525a (paragraph 15) and 419a (pp. 77-78).

The role profile for Plaintiff's permanent position (that of Test Development

Program Assistant) identifies the following job responsibilities:

> a. Acts as liaison between manager and unit staff/in-house staff and outside customers/vendors, etc. to expedite completion of projects, disseminate information, etc.
>
> b. Builds/maintains databases, requiring the organizing and preparing of reports and documents that integrate several data sources, technology and software applications.
>
> c. Assists with management and/or monitoring of implementation of new technology, systems, and software within TDS to ensure successful transition and continued utilization.
>
> d. Tracks/compiles budgets, and other materials. Assists in planning, developing procedures, etc. Leads managers in development of subunit budgets consistent with annual NBME and Unit goals.
>
> e. Assists with development of processing routines to optimize operational test development activities, provide quality assurance, and/or facilitate decision-making. Manages projects as assigned.
>
> f. Creates, updates, and/or disseminates documentation for new and existing procedures and routines; includes direct user support and training. Collaborates with other units in the design and/or testing of new technology and software; serves as TDS advocate.

485a- 487a (Test Development Program Assistant Role Profile).

Like its predecessor, the foregoing role profile given to Plaintiff does not

contain any reference to clerical tasks. Defendant claims that "[u]nknown to her

8

supervisor, Plaintiff removed various "assist" tasks [from the profile]". *See* 90a (paragraph 17). This is not the case. In fact, Plaintiff testified she made no changes to the foregoing profile without Ms. Holtzman's permission. 422a (p. 90). Defendant also contended in its summary judgment motion that "all … employees, not just Plaintiff, are expected to perform all of the job-related and support tasks assigned by his or her supervisor [sic] whether or not they were expressly designated in a role profile." 90a (paragraph 17). As Plaintiff noted in the district court, Defendant failed to point to any facts of record supporting these allegations. 526a (paragraph 17).

Defendant has also contended that by June of 2006 or earlier, Plaintiff was "actively seeking new employment." However, Plaintiff testified that she had resumes pending from other possible employers before she was even hired by Defendant and did not think about leaving Defendant's employ until October 2006. 459a (pp. 236-237). In mid-October, she had complained to HR about age discrimination. 477a (p. 306).

Plaintiff was given an informal mid-year evaluation in June 2006 and testified that this evaluation was "a great review". 437a (p. 147). Plaintiff also attempted to apply for other positions with Defendant after receiving her permanent full-time position. On September 19, 2006 Plaintiff asked her supervisor (Ms. Holtzman) if she was qualified for the position of Test

Development Associate I (Special Projects) and she and Ms. Holtzman agreed to discuss the matter further. Plaintiff applied for the foregoing position on October 18, 2006 but then withdrew her application on November 6, 2006. 92a (paragraph 23). Plaintiff also applied for the position of case developer on October 20, 2006 and unilaterally withdrew this application on November 6, 2006. 92a (paragraph 25). She testified that she withdrew this application because Ms. Holtzman told the individuals hiring for the position not to hire Plaintiff. Plaintiff chose to withdraw the application rather than be "humiliated" by going through an interview despite the fact that she had no chance of receiving the job due to Ms. Holtzman's intervention. 472a (pp. 287-288).

Plaintiff testified she performed the tasks included in her role profile as well as tasks not included therein. She testified that she performed whatever tasks Ms. Holtzman asked her to carry out. 423a (pg. 94). She specified that "I wasn't given the work that was on my job description." 423a (pp. 94-95). In fact, she was excluded from carrying out the work listed on her role profile and "basically wound up intermittently doing the databases or doing − fixing typos for other people, Xeroxing for other people." *Id.*

On October 18, 2006, Plaintiff met with Barbara Davidson (Defendant's Director of Human Resources) to complain that Ms. Holtzman had re-done some of her edits. 96a (paragraph 44). Defendant claims Plaintiff "did not raise her age

as an issue at that meeting." 96a (paragraph 45). This is flatly incorrect. In fact, Plaintiff testified she believed Ms. Holtzman was treating her differently than younger employees and testified that she told Ms. Davidson "[c]an't you see what she's doing here? We're all the older women that are stuck in this position ... and then I said, *this is age discrimination.*" 477a (pg. 306)(emphasis added).

In an email exchange involving Plaintiff and Ms. Holtzman between October 19, 2006 and November 8, 2006, *see* 491a – 494a, Ms. Holtzman stated to Plaintiff that her role was to " . . . streamline the correction process by doing the cut and paste work after Krista, Kathy, and I edited the video text to make it easier for Keiran to finalize the product." 492a. In response, Plaintiff set forth her concerns about the tasks she had been given by Ms. Holtzman:

> The real issue is – that I have reviewed most of the e-mails between you and I over the last year. They primarily consist of your requests to me to: print out files and put them on your chair, Xerox articles and put them in your office, cut and paste in various word files, to file or keep track of various documents, and punching holes in final reports.
>
> None of the assignments have been appropriate for my skills, education and technological background – and frankly, have been insulting.

491a.

Plaintiff further stated:

> In your failure to acknowledge my capabilities, I have felt very frustrated for the last several months. I showed

> my resume to Krista and Kathy Angelucci, hoping that I could move into the Test Development Associate position that was opened. For this you insulted me, insisting I was "bragging" about how smart I was, that I had a Master's degree and formal computer training, etc.

> 491a.

Plaintiff also forwarded these emails to Barbara Davidson (the aforementioned Director of Human Resources), stating that:

> I am sending this to you so you will not (sic) what continues to transpire up here. This letter by me is in response to a letter sent {below} by Kathy – to me, on Monday morning. I really felt it was time to confront my treatment here - because at this point I feel I have nothing to lose.

> 491a.

Although Defendant claims Ms. Holtzman offered to meet weekly with Plaintiff, such meetings never occurred and Plaintiff testified that when she first tried to meet with Ms. Holtzman, Ms. Holtzman told her "I don't want to talk to you." 465a (pg. 261).

On October 26, 2007, Ms. Holtzman assigned two database projects to Plaintiff and requested that she identify the time she was spending on the various tasks she had worked on. In her email to Plaintiff assigning this project, Ms. Holtzman acknowledged that others involved with the project were "quite pleased" with the work Plaintiff had been doing. 496a. In fact, the request that Plaintiff

keep track of her time was impossible to fulfill because it required Plaintiff to reconstruct time she had spent as long as five (5) months before. Plaintiff testified as follows:

> After I had worked on this database, she wanted me to break down what I had done *in the past four or five months on each thing after the fact.* You know, then she decided, "Okay. When you built this database, how much time did you spend on user interface? How much time did you spend cleaning up the Power Point slides?" After everything was almost done, then she's asking me to backtrack, and I said, "I can't do that. It's impossible.

471a (pp. 282-283)(emphasis added).

Plaintiff further testified that "I couldn't do it honestly is what I thought. I could never have done it. It was impossible." 471a (p. 283). Plaintiff believed that this request was intended to harass her because the request was impossible to complete. 471a (p. 282-283).

On November 5, 2006 Ms. Holtzman wrote to Defendant's HR Department regarding her concern that Plaintiff was not documenting her time. 98a – 99a (Paragraph 55).

On November 8, 2006 Plaintiff wrote to Ms. Davidson and requested that she not be required to report to Ms. Holtzman any longer because she was being belittled by Ms. Holtzman and given only clerical tasks. *See* 292a (November 8, 2006/8:36 a.m. email from Plaintiff to Barbara Davidson). After Ms. Davidson told Plaintiff she needed to focus on getting her work done and was spending too

much time on what Davidson perceived as a conflict with her supervisor, 99a. (paragraph 59), Plaintiff wrote Ms. Davidson an email stating that HR " . . . has to step in now. . ." because *"[t]his is retaliatory harassment from my involving your department."* 499a (emphasis added).    Ms. Davidson did not attempt to refute this claim.  Plaintiff further stated in the aforesaid email that:

> I have been doing my work – she has been interrupting me since this all started with lengthy e-mails – and requests for project plans for things I have already completed or am in the midst of – which she ignored the whole year.  She is also wasting my time with charts so she can make pretend I'm on some sort of disciplinary action."

498a (emphasis added).

Plaintiff also used Defendant's "values hotline" to make several complaints about Ms. Holtzman.  100a (paragraph 64).  On November 13, 2006, Plaintiff forwarded a warning email from Ms. Holtzman to Ms. Davidson and then wrote to Ms. Holtzman on November 14, 2006 claiming she was being singled out.  100a (paragraph 65).  Plaintiff also stated to Ms. Holtzman and to Ms. Davidson that she believed she was being subjected to retaliation for complaining to Human Resources.  510a.

On November 16, 2006, Plaintiff wrote to Ms. Holtzman to document a conversation in which they had discussed a possible lateral move for Plaintiff.  In

this email, Plaintiff specifically referenced the fact that individuals who were younger than her were being treated favorably. The email stated as follows:

> It appears that other people, *some younger and with less education and experience,* are being hired into the organization in positions that are higher than Production Assistant – such as editors and test development associates. Some are being promoted without having to apply for position. They were not required to work their way up and start as Program Assistants.
>
> I would appreciate a more specific explanation as to why I am not qualified in your department for any other position than Program or Production Assistant."

512a (emphasis added)

Plaintiff received a "satisfactory" performance review (presented to her by Ms. Holtzman and Ms. Davidson) on November 21, 2006. 101a (paragraph 69).

On November 22, 2006, Plaintiff emailed Ms. Holtzman objecting to the fact that the clerical aspects of her job were not included in the description thereof, *see supra*, and that there was nothing in her role profile about clerical work. Plaintiff also stated that Ms. Holtzman had not given her any assignments that matched her profile. 514a.

Plaintiff's employment with Defendant was terminated only 11 days after her email to Ms. Holtzman stating that younger employees were given chances Plaintiff was not offered. 535a (paragraph 75). While Defendant has claimed Plaintiff was fired for insubordination, it has failed to point to any fact of record

supporting this allegation.    Moreover, Ms. Davidson (the individual to whom Plaintiff directed her first discrimination complaint) wrote Plaintiff's termination memorandum, *see* 358a, and specifically referenced " . . . [y]our communications to your supervisor [*i.e.:* Ms. Holtzman] and me over the past few weeks . . ." as the reason for termination.  358a.

Defendant has also claimed that, after the filing of the instant case, it learned of various alleged misstatements on Plaintiff's resume, including one regarding her former employment at the University of Pennsylvania.  *See* 87a - 89a (paragraphs 5-12).   However, there was no misstatement of fact on Plaintiff's resume, as she had been told by her supervisor at the time she left the University of Pennsylvania that her position was being changed and that her supervisor was no longer interested in having an employee to do database or technical work.  Plaintiff was also told she was overqualified for the position and was not replaced in that position.  404a – 405a (Plaintiff's deposition, pgs. 19-22).

# VI.   ARGUMENT

The District Court's order granting summary judgment should be reversed.

## I.   THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANT

Because genuine issues of material fact remained to be decided by the jury in the instant case, the District Court erred in granting summary judgment to Defendant.

### a.   <u>The Summary Judgment Standard</u>

The Court of Appeals exercises plenary review of a district court order granting summary judgment, applying the same standard utilized by the district court under Fed. R. Civ. P. 56(c). *See, e.g., Haugh v. Allstate Ins. Co.,* 2003 U.S. App. LEXIS 3721, *8 (3d Cir. February 28, 2003); *Northview Motors, Inc. v. Chrysler Motors Corp.,* 227 F.3d 78, 87-88 (3d Cir. 2000). Accordingly, the Court of Appeals may affirm the district court's grant of summary judgment in the instant case if it appears that "… there is no genuine issue as to any material fact …" and that the moving party "… is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c).

Pursuant to Fed.R.Civ.P. 56(c) summary judgment is appropriate only in cases "… where there is no genuine issue of material fact for the jury to decide."

*Coolspring Stone Supply v. American States Life Ins. Co.,* 10 F.3d 144,148 (3d Cir. 1993).

In response to a motion for summary judgment, the nonmoving party (herein, the Plaintiff) must produce evidence demonstrating the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505 (1986). The burden always remains on the moving party, however, to show that a rational trier of fact could not find for the non-moving party and that there is therefore no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S. Ct. 1348 (1986).

In ruling on a motion for summary judgment, the court must accept and believe the evidence of the non-moving party (herein, the Plaintiff) as true, and must not weigh or consider the credibility of witnesses. *Anderson,* 477 U.S. at 248-52. The non-moving party's evidence must be believed as true and any and all doubts must be resolved in that party's favor. *Eastman Kodak Co. v. Image Technological Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076 (1992). On summary judgment, where the non-moving party's evidence contradicts the movant's evidence, then the non-movant's evidence must be taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied,* 507 U.S. 912, 113 S. Ct. 1262 (1993).

Rule 56 and the authorities interpreting it have set a high standard for the granting of summary judgment. Defendant did not satisfy that standard in this case.

### b.     Plaintiff Established a *Prima Facie* Case of Age Discrimination

Plaintiff adduced sufficient evidence during discovery to establish a *prima facie* case of age discrimination.

The Age Discrimination in Employment Act of 1967 (hereinafter the "ADEA") prohibits discrimination against employees on the basis of age, stating that "[i]t shall be unlawful for an employer – to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

To make out a *prima facie* case of discrimination under Title VII, the ADEA, or the PHRA, an individual must show that: (1) she is a member of a protected class; (2) she was qualified for the position sought; (3) she was subjected to an adverse employment action despite being qualified; and, (4) the adverse action occurred under circumstances that raise an inference of discriminatory action. *Lula v. Network Appliance*, 2007 U.S. App. LEXIS 25901, *3 (3d Cir. 2007). In the instant case, Defendant did not challenge the first, second, or third prongs of the *prima facie* test, but rather asserted only that Plaintiff had not

adduced sufficient evidence to raise an inference of age discrimination because she was not replaced by someone younger or fired under circumstances that gave rise to an inference of discrimination. However, as Plaintiff argued in the District Court, sufficient evidence does in fact exist to raise the required inference of discrimination, and genuine issues of material fact are present on that issue.

In failing to provide Plaintiff with job assignments that met her "role profile" (or job description), Defendant took an adverse job action against Plaintiff. "The Supreme Court has defined a tangible, adverse employment action as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Weston v. Pennsylvania*, 251 F.3d 420, 430-431 (3rd Cir. 2001), *citing Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998).

> [A] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. *Galabya v. New York City Board of Education*, 202 F.3d 636, 640 (2d Cir. 2000). To be 'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities; it might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, *significantly diminished material responsibilities* or other indices unique to a particular situation.

*Glanzman v. Metropolitan Management Corp.*, 290 F. Supp. 2d 571,
582 (E.D. Pa. 2003)(emphasis added).

In this matter, Plaintiff's "role profile" identified the following as

Plaintiff's job responsibilities:

> a. Acts as liaison between manager and unit staff/in-house staff
> and outside customers/vendors, etc. to expedite completion of
> projects, disseminate information, etc.
>
> b. Builds/maintains databases, requiring the organizing and
> preparing of reports and documents that integrate several data
> sources, technology and software applications.
>
> c. Assists with management and/or monitoring of implementation
> of new technology, systems, and software within TDS to ensure
> successful transition and continued utilization.
>
> d. Tracks/compiles budgets, and other materials.    Assists in
> planning, developing procedures, etc.    Leads managers in
> development of subunit budgets consistent with annual NBME
> and Unit goals.
>
> e. Assists with development of processing routines to optimize
> operational test development activities, provide quality
> assurance, and/or facilitate decision-making.  Manages projects
> as assigned.
>
> f. Creates, updates, and/or disseminates documentation for new
> and existing procedures and routines; includes direct user
> support and training.    Collaborates with other units in the
> design and/or testing of new technology and software; serves as
> TDS advocate.

*See* 485a.[1]

---

[1] It bears noting that, while Defendant claimed that other duties could be assigned
to Plaintiff (or any employee) even if they did not appear on her "role profile," a

Plaintiff testified that she worked with Ms. Holtzman to create the foregoing role profile and that she did not make any changes without Ms. Holtzman's permission. The profile does not mention clerical tasks to any extent. However, Plaintiff testified that she was compelled by Ms. Holtzman to perform clerical tasks *almost exclusively*. In an email to Ms. Holtzman, Plaintiff stated:

> The real issue is – that I have reviewed most of the e-mails between you and I over the last year. They primarily consist of your requests to me to: print out files and put them on your chair, Xerox articles and put them in your office, cut and paste in various word files, to file or keep track of various documents, and punching holes in final reports.
> None of the assignments have been appropriate for my skills, education and technological background – and frankly, have been insulting.

See 491a (October 23, 2006/11:25 a.m. email).

The foregoing change (*i.e.:* from a technical role to a clerical role) constituted an adverse job action taken against Plaintiff.

Plaintiff further testified that while she was relegated to a clerical role, younger employees (specifically Kieran Hussie and Krista Albee) were given far greater responsibilities, and were even given promotions without having to interview for them. While these employees may have had slightly different job titles, they can still be used as comparators for the purposes of the ADEA.

---

general "catch-all" exception for such duties appeared on the role profile for her *former* (temporary) position, *see* 482a (containing an entry reading "assist with other duties as assigned"), but *not* on her permanent role profile. *See* 485a-487a.

Defendant claimed in its motion that Plaintiff was the only employee in her position. In *Smith v. Thomas Jefferson University*, 2006 U.S. Dist. LEXIS 45079 (E.D. Pa. 2006), the court rejected an argument that employees with unique job titles cannot use employees with similar jobs as comparators, noting that:

> Defendant asserts that because Plaintiff's administrative secretary position was unique within the Division, Plaintiff cannot demonstrate that other similarly situated employees were retained when her position was eliminated and hence, she cannot show that she was terminated under circumstances that give rise to an inference of unlawful discrimination. The Court rejects Defendant's contention that plaintiffs who hold unique positions within their employers' organizations cannot demonstrate discrimination other than through direct proof.

> *Smith v. Thomas Jefferson University*, 2006 U.S. Dist. LEXIS 45079 at *12 (E.D. Pa. 2006).

Although Mr. Hussie may have not held the position of Test Development Program Assistant, the Court may still look at him as a comparable employee for purposes of establishing a *prima facie* case under the ADEA because he had similar skills and responsibilities to Plaintiff.

Accordingly, Plaintiff established that while her job responsibilities were materially reduced to a clerical position, Mr. Hussie and Ms. Albee were advanced quickly through the company by Ms. Holtzman. As such, Plaintiff established a *prima facie* case of age discrimination.

23

**c.**  **Defendant offered no legitimate, non-discriminatory reason to justify the reduction of Plaintiff's job responsibilities**

As Defendant did not set forth any legitimate, non-discriminatory reason for the material change in Plaintiff's job responsibilities, Plaintiff was not required to establish pretext under the familiar framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).

As this Court has noted:

> Briefly summarized, the *McDonnell Douglas* analysis proceeds in three stages. First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's [termination].[2]  Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
>
> *Jones v. School Dist. of Philadelphia,* 198 F.3d 403, 410 (citing *McDonnell Douglas,* 411 U.S. at 802).

In this case, Defendant simply denied that Plaintiff could establish a case for pre-termination discrimination, but (significantly) did not offer any reason to

---

[2] The *McDonnell-Douglas* analysis is couched in terms of denial of promotions, but is applied in the same manner to cases where, as here, the Plaintiff claims he was terminated for a discriminatory reason. *See, e.g., Jones v. City of Wilmington, 299* F. Supp.2d 380, 394 n. 15 (D. Del. 2004) (applying *McDonnell-Douglas* in a firing case).

justify its actions. As such, there was no proffered explanation for Plaintiff to rebut.

### d.    Plaintiff established a *prima facie* claim of retaliation

As Plaintiff was terminated shortly after making her complaints of age discrimination, she can establish a *prima facie* case of retaliation.

"To establish a *prima facie* case of retaliation under the ADEA, a plaintiff must aver three elements: first, that plaintiff engaged in a protected employee activity; second, that the employer took an adverse employment action after, or contemporaneous with, the protected activity; and third, that a causal link exists between the protected activity and the adverse action." *Peters v. Air Products & Chemicals, Inc.*, 2006 U.S. Dist. LEXIS 15330, *18 (E.D. Pa. 2006).

Defendant did not contest the fact that Plaintiff suffered from an adverse job action following her complaints of discrimination. It could not do so. Firing is "obviously" an adverse job action. *EEOC v. Avecia, Inc.,* 151 Fed.Appx. 162 (3d Cir. 162, 164 (3d Cir. October 30th, 2005).

In this case, the evidence established that Plaintiff complained about age discrimination - both to Ms. Davidson on October 18, 2006, and to Ms. Holtzman on November 16, 2006. On October 18, 2006, Plaintiff advised Ms. Davidson (Defendant's head of HR) that ... *this is age discrimination."* 477a (pg. 306)(emphasis added). On November 16, 2006, Plaintiff advised Ms. Holtzman

that " . . .[i]t appears that other people, *some younger and with less education and experience,* are being hired into the organization in positions that are higher than Production Assistant – such as editors and test development associates. Some are being promoted without having to apply for position. They were not required to work their way up and start as Program Assistants." 512a (emphasis added).

While Defendant claims that Plaintiff did not make any complaints of age discrimination, the record belies this assertion. Plaintiff *explicitly told Ms. Davidson that she was being subjected to age discrimination.* Viewing the evidence in the light most favorable to Plaintiff, as the Court must under Fed.R.Civ.P. 56 and the authorities interpreting it, this testimony has to be credited and accepted as true.

In addition, in her November 16, 2006 email to Ms. Holtzman, Plaintiff again complained of age discrimination. *See* 512a, *supra.* This email, only eleven days before Plaintiff's termination, is sufficient to constitute protected activity under the ADEA.

Finally, as Plaintiff was terminated one month after complaining to Ms. Davidson on October 18, 2006 and only eleven days after complaining to Ms. Holtzman on November 16, 2006, she can establish causation through temporal proximity. *See Moore v. City of Philadelphia,* 461 F.3d 331, 352 (3rd Cir. 2006) ("temporal proximity may provide an evidentiary basis from which an inference of

retaliation can be drawn" by the fact finder"). Plaintiff may also establish causation through "other evidence of retaliatory animus." *Parker v. Phila. Newspapers, Inc.,* 322 F. Supp. 2d 624, 631 (E.D. Pa. 2004). In this case, Plaintiff can prove causation utilizing both the foregoing types of evidence.

Temporal proximity " . . . may provide an evidentiary basis from which an inference of retaliation can be drawn . . . " by the factfinder. *Moore v. City of Philadelphia*, 461 F.3d 331, 352 (3rd Cir. 2006). In cases where the adverse job action occurs rapidly after the protected activity, temporal proximity is sufficient to establish causation. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3rd Cir. 1989). Indeed, the United States Supreme Court has held that where the temporal proximity between the protected activity and the adverse action is "unusually suggestive," it is sufficient – *even standing alone* – to create an inference of causality and defeat summary judgment. *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (holding that temporal proximity alone, when "very close," can in some instances establish a *prima facie* case of retaliation). Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, gaps as long as three months between the protected activity and the adverse action have been held insufficient to create an inference of causation. *LeBoon v. Lancaster Jewish Community Center Ass'n,* 503 F.3d 217, 233 (3d Cit. 2007). Plaintiff respectfully

submits that the eleven-day gap in the instant case is sufficient in and of itself, and in light of *Clark County School District, supra,* to create the required inference.

In this matter, a mere eleven days elapsed between Plaintiff's email to Ms. Holtzman and her termination. Such a brief period of time is sufficient to establish temporal proximity without further evidence. Moreover, Ms. Davidson (the individual to whom Plaintiff directed her first complaint) wrote Plaintiff's termination memorandum, *see* 358a, and specifically referenced " . . . [y]our communications to your supervisor [*i.e.:* Ms. Holtzman] and me over the past few weeks . . ." in that document as the reason for termination. This is sufficient to create a inference that Ms. Davidson (1) knew of the later communication to Ms. Holtzman and (2) based Plaintiff's termination on that communication and the earlier one Plaintiff had made to her.

However, Plaintiff also has other evidence of retaliatory animus in this case, and can therefore also establish causation through the pattern of antagonism by Ms. Holtzman following Plaintiff's complaint to Ms. Davidson.

Plaintiff may establish causation through "a pattern of antagonism coupled with timing." *Lauren W. v. DeFlaminis,* 480 F.3d 259, 267 (3rd Cir. 2007). In this matter, Plaintiff testified that, shortly after meeting with Ms. Davidson, she was ordered by Ms. Holtzman to recreate time records for the past four or five months. 471a (pp. 282-283)(emphasis added). Plaintiff viewed this assignment as an

impossible one intended to harass her.   In fact, Plaintiff made numerous, contemporaneous complaints through the Values Hotline that she was suffering retaliation for complaining to Ms. Davidson.   Defendant admits this.   100a (paragraph 64).  As such, there is sufficient evidence that Plaintiff was subjected to a pattern of antagonism following her initial complaints to Ms. Davidson, as well as significant temporal proximity following her email to Ms. Holtzman. Accordingly, there exists a genuine issue of material fact as to the issue of causation.

e.    **Plaintiff can demonstrate that Defendant's proffered reason for her termination is pretextual**

In this matter, there was more than sufficient evidence that the proffered reason for Plaintiff's termination was pretextual.

> [A] plaintiff who has made out a *prima facie* case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.  Thus, if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her *prima facie* case.

> *Fuentes v. Perskie*, 32 F.3d 759, 764 (3rd Cir. 1994).

In order to discredit the employer's proffered reasons for taking an adverse job action, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence". *Id.*, at 765.

Defendant claimed that Plaintiff was terminated for insubordination, but offered no factual testimony or affidavits of decision-makers stating exactly what the specific acts of insubordination were. While Defendant supported its motion with an Affidavit by Barbara Davidson, that affidavit did not establish the precise reason for Plaintiff's termination. Similarly, the letter sent to Plaintiff regarding her termination states only that:

> Your communications to your supervisor and me over the past few weeks make it clear that you are not interested in performing the duties of Program Assistant as defined by the NBME. The job that you proposed in your email of November 22, 2006, is not available and will not be offered to you. As such, effective Friday December 1, 2006, your employment with the NBME is terminated.

> 358a.

This memo fails to mention insubordination or to address the fact that Plaintiff had made it very clear that she *did* wish to perform her job duties as they were defined by her Role Profile, but that she felt she had been assigned only low-level clerical tasks and complained that she was suffering discrimination because

of her age. Plaintiff had merely been expressing her frustration with Defendant's

refusal to permit Plaintiff to perform her job as it was defined. It was this fact that

Plaintiff was trying to explain in her email of November 22, 2006, in which she

stated:

> You really need to re-read my role profile – which is not
> the one you brought to HR. You have not given my any
> assignments that match this profile. I have created
> assignments that are appropriate and innovative for the
> department on my own – and have been penalized for it.
>
> There is nothing in my role profile about clerical work.
>
> 514a.

Defendant attempted to misconstrue this attempt by Plaintiff to obtain a

clarification of her job duties as "insubordination" in an effort to terminate Plaintiff

for complaining about age discrimination.

Defendant also identified Plaintiff's failure to provide a breakdown of her

time as insubordination. However, as Plaintiff testified, the request that Plaintiff

recreate her time records from months ago was unreasonable and impossible to

fulfill. The fact that Plaintiff identifies this demand as evidence of retaliation casts

doubt on its validity as a source of insubordination. Under Defendant's theory,

Plaintiff could have been given any number of impossible tasks and then been fired

for failing to complete them.

Defendant produced no evidence that Plaintiff ever declined a job assignment or refused to perform any task given to her. In fact, *Plaintiff testified that she did every task that Ms. Holtzman assigned to her.* Defendant also pointed to an email that was not sent to anyone at Defendant and attempted to infer what Plaintiff's motivations were in sending that email. Such an inference was improper for purposes of supporting a request for summary judgment. Plaintiff, not Defendant, is entitled to all reasonable inferences in the context of summary judgment. *See, e.g., Eastman Kodak Co. v. Image Technological Services, Inc., supra,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076 (1992).

Plaintiff presented evidence that Defendant's proffered reason for termination – insubordination – is not worthy of credence. As such, Plaintiff can establish facts that would lead to the conclusion that such excuse was merely a pretext to mask the retaliatory reason for Plaintiff's termination. Consequently, Defendant's motion should have been denied.

 **f.**   **As the Pennsylvania Human Relations Commission (PHRC) waived its right to conduct an investigation, Plaintiff did not fail to exhaust her administrative remedies.**

As the Pennsylvania Human Relations Commission affirmatively stated that it would not be conducting an investigation in this case, Plaintiff did not fail to exhaust her state law administrative remedies by filing this matter in court.

Plaintiff filed her EEOC and PHRA claims on or about November 29, 2006. On February 5, 2007, the PHRA issued a letter stating that the agency had waived it right to investigate the claim, and that the PHRC would not be taking any further action on the complaint. 520a (February 5, 2007 letter from PHRC). Subsequently, on May 7, 2007, the EEOC closed its investigation and issued a notice of right to sue. 522a.

Defendant argued below that Plaintiff's PHRA claim should have been dismissed because one year did not elapse between the filing of the charge and the filing of the Complaint. Such an argument, however, ignores the fact that the PHRC was not conducting any investigation and, as such, no administrative remedy would ever have been forthcoming from the Commission. This "form before function" argument also ignores significant precedent that a dismissal with prejudice is not the proper remedy for bringing a PHRA claim prematurely. *See McGovern v. Jack D's, Inc.*, 2004 U.S. Dist. LEXIS 1985 (E.D. Pa.) (Van Antwerpen, J.); *Padgett v. Y.M.C.A.*, 1998 U.S. Dist. LEXIS 18693 (E.D. Pa.) (Powell, J.), *McBride v. Bell of Pennsylvania*, 1989 U.S. Dist. LEXIS 7177 (E.D. Pa.) (Kelly, J.) *Reid v. Kraft General Foods*, 1995 U.S. Dist. LEXIS 5595 (E.D. Pa.) (Padova, J.), *Esmonde v. TV Guide Magazine*, 1992 U.S. Dist. LEXIS 3912

(E.D. Pa.) (Pollack, J.).[3]  In each of these cases, the court held that the proper remedy was to dismiss the case *without* prejudice, with leave to refile once the PHRC had closed its case.  In *Kozlowski v. Extendedicare Health Services*, 2000 U.S. Dist. LEXIS 1493, *15 (E.D. Pa.) (Yohn, J.), the court dismissed the plaintiff's PHRA claim (with leave to refile), stating that "[t]he plaintiff filed her initial complaint in this suit just over five months after filing her administrative complaint with the PHRC.  In doing so, she refused to give the PHRC the opportunity to resolve her complaint through conciliation and failed even to make a good faith attempt to exhaust her remedies as required by the PHRA." *Id.*, at *15. *See also Schweitzer v. Rockwell Int'l*, 402 Pa. Super. 34, 586 A.2d 383 (Pa, Super. 1990) ("Invocation of the procedures set forth in the [PHRA] entails more than the filing of a complaint; it includes the good faith use of the procedures provided for disposition of the complaint.")

In *Atkinson v. Lafayette College*, 2002 U.S. Dist. LEXIS 1432 (E.D. Pa.) (Buckwalter, J.), the court refused to dismiss a claim under the PHRA that was filed prior to the expiration of the one-year period, holding that the Plaintiff had not demonstrated a lack of good faith use of the PHRA administrative process.

---

[3] In *Lantz v. Hospital of the University of Pennsylvania*, 1996 U.S. Dist. LEXIS 11154 (E.D. PA.) (Bechtle, J.), a case cited by Defendant in its brief, the court never had to address the appropriate remedy, as, in that case, there was an issue of fact as to the whether the PHRC ever received and docketed a claim.  Such is clearly not the case in this matter, as the PHRC has acknowledged receiving all Plaintiff's claims and waived its rights to investigate each.

In this matter, Plaintiff received notice that the PHRC was not conducting any investigation and would not be taking any additional action regarding Plaintiff's claims. Plaintiff was then faced with the prospect of a pending notice of right to sue from the EEOC. Plaintiff was required to file her complaint prior to the expiration of a one-year period from the initial date of her state filing or lose her federal remedies. That Plaintiff filed her complaint in federal court should not deprive her of her right to seek state remedies, especially in light of the fact that the PHRC was not performing any action.

### g.     **Plaintiff did not commit any fraud in her application**

Defendant also contended below that Plaintiff made misrepresentations in her employment application (of which it claimed to have learned during discovery in this case). Plaintiff did not misrepresent any material on her application for employment with Defendant. Plaintiff stated that she had been terminated from the University of Pennsylvania when the position was eliminated. This was consistent with what Plaintiff was told by her supervisor at the University of Pennsylvania when she was let go. As such, Plaintiff was truthful in her application, and did not commit any fraud. 404a – 405a (Plaintiff's deposition, pgs. 19-22).

With respect to the documents on her computer, Plaintiff testified that she took the documents home in order to work from home, and that Ms. Holtzman was aware of this fact. As such, Plaintiff did not violate any policy of Defendant.

While Plaintiff did not delete these files when she was fired, Plaintiff testified that the files were comprised of nothing more that "obsolete slides".  435a (p. 141).  In addition, while Defendant submitted an affidavit stating that Plaintiff could have been fired for "dishonesty on one's application", Defendant offered no such claim with regard to the documents on Plaintiff's "thumb drive".  As such, there was no evidence in the record to support a claim that Plaintiff would have been terminated for failing to delete old files from her computer had she still been working for Defendant.

**h.**     **Plaintiff is entitled to damages for pain and suffering under the PHRA**

Plaintiff is entitled to an award of damages for pain, suffering, and humiliation pursuant to her PHRA claim.  Pursuant to 43 P.S. §959(f)(1), damages under the PHRA include, "damages caused by humiliation and embarrassment."  Accordingly, Plaintiff's claim for such non-economic damages was proper.

**II.     THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING ADDITIONAL DISCOVERY AND IN DENYING PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS**

The District Court also abused its discretion in denying Plaintiff's motion for additional discovery and her motion to compel depositions.

a.      **The standard of review for District Court decisions involving discovery**

The Court of Appeals reviews questions concerning the scope or opportunity for discovery for abuse of discretion. *See Country Floors Inc. v. Gepner & Ford,* 930 F.2d 1056, 1062 (3d Cir. 1992).   Review of the District Court's denial of Plaintiff's motion to extend the discovery deadline, *see* 46a (motion for extension) and 69a (Order denying motion) and motion to compel discovery, *see* 70a (motion to compel) and 83a (Order denying motion to Compel) is also conducted under an abuse of discretion standard. *See In re Fine Antitrust Litig.,* 685 F.2d 810, 817 (3d Cir. 1982).

b.      **The District Court's decisions on Plaintiff's Motion to Compel and Motion for Extension should be reversed**

Plaintiff recognizes that she has " . . . a heavy burden to bear . . ." in seeking to overturn the District Court's Orders respecting discovery, " . . . as matters of docket control and conduct of discovery are committed to the sound discretion of the trial court." *Id.*   Under the abuse of discretion standard, the Court of Appeals typically " . . . will not interfere with a trial court's control of its docket 'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." *In re Fine Antitrust Litig., supra,* at 817 (citing *Eli Lilly & Co. v. Generix Drug Sales, Inc.,* 460 F.2d 1096, 1105 (5th

Cir. 1972)). The District Court's decisions concerning conduct of discovery are typically affirmed absent a demonstration that the court's action made it impossible to obtain crucial evidence and that more diligent discovery was impossible. *Id.* (quoting *Eli Lilly & Co.,* 460 F.2d at 1105).

As Plaintiff averred in her Motion for Extension of the Discovery Deadline, *see* 46a, on September 7, 2007, the district court entered a Scheduling Order establishing November 16, 2007 (less than two months from the filing of the Complaint) as the deadline for the completion of discovery. Both Plaintiff and Defendant served and responded to written discovery requests within that deadline and Plaintiff's deposition was completed within that deadline. *Id.* Plaintiff had attempted to schedule the depositions of several employees of Defendant before the expiration of the discovery deadline, but Defendant's counsel was unavailable to attend. Plaintiff sought an extension of discovery until December 31, 2007. *Id.* The District Court denied it. 69a.

As Plaintiff noted in her Motion to Compel, 70a, Plaintiff noticed the depositions of witnesses Kathy Holtzman, Barbara Davidson, Kieran Hussey, Faith Balsama and Debbie Shelmire for Thursday, November 15, 2007. Defendant's counsel responded that she was not available for the depositions, and did not provide any alternate dates on which she would be able to appear. *Id.*

Although it is submitted that Plaintiff adduced sufficient evidence to defeat summary judgment as set forth *supra,* the depositions of the foregoing witnesses could well have produced even more evidence that might have assisted her in prosecuting her case. Ms. Holtzman and Ms. Davidson in particular were important witnesses because they were instrumental in Plaintiff's termination. *See supra.* Plaintiff respectfully submits that she was diligent in seeking her requested discovery and that she has established " . . . actual and substantial prejudice . . ." in light of the very short discovery deadline set by the Court and the fact that she attempted to schedule and compel her requested depositions within that deadline. *In re Fine Antitrust Litig., supra.*

The District Court's Orders denying Plaintiff's motion for extension and motion to compel should be reversed.

## VII.  CONCLUSION

For the foregoing reasons, the District Court's Order granting summary

judgment and its Orders denying Plaintiff's motion for extension and motion to

compel should be reversed.


Respectfully submitted,


TIMOTHY M. KOLMAN AND ASSOCIATES

BY: _____
Timothy M. Kolman
Attorney for Plaintiff
225 North Flowers Mill Road
Langhorne, PA 19047
(215) 750-3134


July 14, 2008

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED.R.APP.P. 32(a)(7)(B)

Pursuant to Fed.R.App.P. 32(a)(7)(B), I hereby certify that the Brief of Appellant in the instant matter complies with the 14,000-word type-volume limitation of Fed.R.App.P. 32(a)(7)(b)(i) in that, based on a word-count completed on the brief before filing using the Microsoft Word word-counting function, it contains 8,020 words.

TIMOTHY M. KOLMAN AND ASSOCIATES

/s/ Timothy M. Kolman
Timothy M. Kolman
Attorneys for Plaintiff
225 North Flowers Mill Road
Langhorne, PA 19047
(215) 750-3134

July 14, 2008

## CERTIFICATE OF COMPLIANCE
## REGARDING ELECTRONIC FILING

Pursuant to Fed.R.App.P. 32(a)(7)(B), I hereby certify that the electronic and hard copies of Appellant's Brief in the instant matter contain identical text and that a virus check was performed upon the electronic copy of the brief using Norton Anti-Virus.

TIMOTHY M. KOLMAN AND ASSOCIATES

/S/    Timothy M. Kolman
_____

Attorney for Plaintiff
225 North Flowers Mill Road
Langhorne, PA 19047
(215) 750-3134

July 14, 2008

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

TIMOTHY M. KOLMAN AND ASSOCIATES

/S/    Timothy M. Kolman

_____
Attorney for Plaintiff
225 North Flowers Mill Road
Langhorne, PA 19047
(215) 750-3134

July 14, 2008

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served two copies of Appellant's Brief and Appendix upon the foregoing individual(s) by first class mail, postage prepaid on the date indicated below:

Bebe H. Kivitz, Esquire
Troiani/Kivitz, LLP
38 North Waterloo Road
Devon, PA 19333

TIMOTHY M. KOLMAN AND ASSOCIATES

/s/ Timothy M. Kolman, Esquire
Timothy M. Kolman
Attorney for Plaintiff
225 North Flowers Mill Road
Langhorne, PA 19047
(215) 750-3134

July 14, 2008

# APPENDIX OF PLAINTIFF/APPELLANT
## TABLE OF CONTENTS

**VOLUME I**
**(Appended to Brief)**

Trial Court Opinion and Order..................................................................... 1a.

Notice of Appeal ....................................................................................... 24a.

**VOLUME II**

Docket Entries........................................................................................... 25a.

Plaintiff's Complaint ................................................................................. 29a.

Defendant's Answer to Complaint ............................................................ 36a.

Case Management Order............................................................................ 45a.

Plaintiff's Motion for Extension of Time to Complete Discovery ................... 46a.

Defendant's Response in Opposition to Plaintiff's Motion
For Extension of Time ............................................................................... 51a.

Order Denying Plaintiff's Motion for Extension of Time ................................ 69a.

Plaintiff's Motion to Compel Depositions...................................................... 70a.

Defendant's Response to Plaintiff's Motion to Compel.................................. 77a.

Order denying Plaintiff's Motion to Compel.................................................. 83a.

Defendant's Motion for Summary Judgment, Statement of Facts,
and supporting Exhibits............................................................................. 85a.

Plaintiff's Memorandum of Law in Response to Defendant's
Motion for Summary Judgment and attached Exhibits.................................. 384a.

Plaintiff's Response to Defendant's Statement of Facts................................... 523a.

Defendant's Part "1" of Exhibit 8 to its Motion for Summary Judgment ........ 537a.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DIANE ROSETSKY                    :    CIVIL ACTION
                                  :
          v.                      :
                                  :
NATIONAL BOARD OF MEDICAL         :
EXAMINERS OF THE UNITED STATES    :
OF AMERICA                        :    NO. 07-3167

JUDGMENT

AND NOW, this 19th day of February, 2008, in accordance

with the accompanying Order in which the Court granted

defendant's motion for summary judgment, JUDGMENT IS ENTERED in

favor of defendant National Board of Medical Examiners of the

United States of America and against plaintiff Diane Rosetsky.

BY THE COURT:


/s/ Stewart Dalzell, J.

**1a.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DIANE ROSETSKY                          :    CIVIL ACTION
                                        :
        v.                              :
                                        :
NATIONAL BOARD OF MEDICAL               :
EXAMINERS OF THE UNITED STATES          :
OF AMERICA                              :    NO. 07-3167

ORDER

AND NOW, this 19th day of February, 2008, upon

consideration of defendant National Board of Medical Examiners of

the United States of America's ("NBME") motion for summary

judgment (docket entry #14), plaintiff's response, and the Court

finding:

(a)    Plaintiff Diane Rosetsky sued NBME for age

discrimination under the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621, et seq., and the Pennsylvania Human

Relations Act, 43 Pa. Cons. Stat. Ann. § 951, et seq ("PHRA");

NBME moved for summary judgment[1] on all claims, and we shall

---

[1]Summary judgment is appropriate if there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In ruling
on a motion for summary judgment, the Court must view the
evidence, and make all reasonable inferences from the evidence,
in the light most favorable to the nonmoving party.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Whenever a
factual issue arises which cannot be resolved without a
credibility determination, at this stage the Court must credit
the non-moving party's evidence over that presented by the moving
party.  Liberty Lobby, 477 U.S. at 255.

2a.

grant its motion;

(b)  On September 27, 2005, NBME hired Rosetsky, then forty-seven years old, as a temporary Test Development Associate I; on December 19, 2005, NBME took her on full-time as a Test Development Program Assistant; at all times she was an at-will employee, Def.'s Mem. Ex. 1, 2; while employed at NBME, Rosetsky's direct supervisor was Katherine Holtzman;

(c)  NBME maintains Role Profiles which consist of lists of job duties associated with the various positions at NBME; a Test Development Program Assistant Role Profile contains

---

The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986). Once the moving party carries this burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).  The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions.  Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982).  It is not enough to discredit the moving party's evidence, the non-moving party is required to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Liberty Lobby, 477 U.S. at 257 (emphasis in original). A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence. See Liberty Lobby, 477 U.S. at 249-50.  Also, If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

2

a variety of duties, including building and maintaining

databases, assisting with implementation of new technology,

tracking and compiling budgets and other materials, assisting

with quality assurance, creating, updating, and disseminating

documentation, and "[i]dentify[ing]

training/documentation/support needs, provid[ing] status reports,

project planning," Pl.'s Mem. Ex. C at 951-52;

      (d)  Rosetsky testified that NBME assigned her tasks

that were consistent with the job duties listed in the Role

Profile, but that she was also asked to do clerical work for

Holtzman and other supervisors, e.g., photocopying, proofreading,

Def.'s Mem. Ex. 8 [hereinafter Pl.'s Dep.] at 77-79, 94-95 101-

02, 104, Ex. 14; in general, Rosetsky testified that she did

"[w]hatever Kathy [Holtzman] asked me to do," id. at 94;

      (e)  Rosetsky had no problem with Holtzman until about

September of 2006, Pl.'s Dep. at 83, 85;

      (f)  On September 19, 2006, Rosetsky expressed interest

in the position of Test Development Associate I, Special

Projects, which had recently opened up because Kieren Hussie, who

held the position and was under forty, had been promoted, Def.'s

Mem. at Ex. 16; Pl.'s Dep. 123;

      (g)  Rosetsky formally applied for the Test Development

Associate position as well as a Case Developer position on
October 18 and October 20, 2006, respectively, Def.'s Mem. at Ex.
16; but she then withdrew both applications on November 6, 2006
because she felt that Holtzman would prevent her from getting the
job, id; Pl.'s Dep. 287-88; in an October 23, 2008 email,
Rosetsky wrote to Holtzman,

> I showed my resume to Krista and Kathy
> Angelucci, hoping that I could move into the
> Test Development Associate position that was
> opened. For this you insulted me, insisting
> I was 'bragging' about how smart I was, that
> I had a Master's degree and formal computer
> training, etc. Maybe you do have a problem
> with my advanced education and skills. As
> far as your insistence that Kathy Angelucci
> does the hiring...everyone knows [that] you
> control everything that happens in this
> department.

Id. Ex.18;

(h)  In October of 2006, Rosetsky was asked by a co-
worker to edit hundreds of tutorial slides; after she had
finished the task, Holtzman found out about Rosetsky's editing,
became angry with her, and apparently told Rosetsky that all she
was supposed to do was "cut and paste" other people's edits; then
Holtzman re-edited Rosetsky's work, Pl.'s Dep. at 103-04, Def.'s
Mem. 18;

(i)  On October 18, 2006, Rosetsky went to see Barbara

4

Davidson, the Director of Human Resources, to complain that
Holtzman re-edited her work and would not let anyone use her
edits, id. at 103-04, 265;

(j)  The next day, Rosetsky met with Davidson again to
express frustration with the way Holtzman was treating her and
that she was not getting work that made proper use of her
abilities, Def.'s Mem. Ex. 19;

(k)  Rosetsky testified that during these meetings with
Davidson, she specifically stated that she believed that
Holtzman's actions were motivated by age discrimination; Rosetsky
also testified that she told her co-workers Faith Balsama and
Debbie Shelmire that "We're the older women here, and that's why
we're kept in these positions," Pl.'s Dep. at 306;

(l)  On October 22, 2006, Holtzman sent Rosetsky an
email about her responsibilities during the tutorial slide
editing project; Holtzman wrote, "you have misconstrued your role
in this project [which] was and is to provide support for the
team.  It was never my intention for you to play a lead role...I
was actually hoping that you could streamline the correction
process by doing the cut and paste work...[but] you seemed to
have the impression that you would be doing the editing...it
seemed reasonable to let you try your hand at this...[but no]

5

matter who did the initial editing, I was going to have to look

through the work and make the final decisions about wording,"

Def.'s Mem. Ex. 18;

> (m)  Early the next morning, Rosetsky responded,

>> I never expected you to use [the edits]
>> without changes, however, you completely
>> ignored them.  I still think they were
>> skillfully and professionally done.  But I
>> don't think this is the real issue here.  The
>> real issue is -- that I have reviewed most of
>> the emails between you and I over the last
>> year.  They primarily consist of your
>> requests to me to: print out files and put
>> them on your chair, xerox articles and put
>> them in your office, cut and paste in various
>> word files, to file or keep track of various
>> documents, and punching holes in final
>> reports.  None of the assignments have been
>> appropriate for my skills, education and
>> technological background -- and frankly, have
>> been insulting.

Id;

> (n)  Rosetsky forwarded the email chain containing the

excerpt above to Davidson, noting that "it was time to confront

my treatment here -- because at this point I feel I have nothing

to lose," id;

> (o)  Rosetsky apparently attempted to talk with

Holtzman about these issues, but she was rebuffed, Pl.'s Dep. at

261;

> (p)  On October 26, 2006, Holtzman also contacted Human

6

Resources for help with dealing with Rosetsky, Def.'s Mem. Ex.
20; after this, apparently Holtzman offered to meet, but they
never did, Pl.'s Dep. at 261;

    (q)   The same day, Holtzman assigned Rosetsky to two
database projects, Def.'s Mem. Ex. 22;

    (r)   Four days later, Holtzman directed Rosetsky to
"keep a record of what you are working on each day and send me
the list each Friday;" and after Rosetsky gave her a breakdown of
her activities on a particular project, Holtzman reiterated that
"from here on out please account for you [sic] time on a daily
basis by project;" Holtzman explained that "It is good to know
the amount of time spent on a project so that we can use the
information to make decisions about whether to continue
development and/or projecyt [sic] time required for development
of similar projects in the future," id. Ex. 23;

    (s)   On November 5, 2006, Holtzman emailed Human
Resources to air her grievances about Rosetsky; in particular,
Holtzman noted that Rosetsky had failed to provide work summaries
and status reports as requested, and was speaking to other people
in the department about her problems with Holtzman, Def.'s Mem.
Ex. 24;

    (t)   Two days later, Davidson met with Rosetsky and

7

Holtzman to discuss their workplace problems; after this meeting, Holtzman emailed Rosetsky, stating that she should "immediately stop...sharing frustrations about your work assignments, interpersonal relationship with me, or other observations regarding Test Development management" with anyone; instead, Rosetsky was to "schedule a meeting with me to discuss issues that arise. If you believe I am not being responsive, it would also be appropriate for the next step to be a meeting with David Swanson. At any time, you should feel comfortable to discuss concerns with Human Resources," Def.'s Mem. Ex. 25; but Rosetsky continued to discuss her problems with Holtzman with her co-worker, Faith Balsama, id. Ex. 27;

     (u)  In the same email Holtzman also directed Rosetsky to provide her with various reports on ongoing projects, Def.'s Mem. Ex. 25;

     (v)  On November 8, 2006, Rosetsky emailed Davidson requesting to be placed under a different supervisor and to have her cubicle moved because Holtzman continued to belittle Rosetsky and give her clerical work, id. Ex. 26;

     (w)  The next day, Rosetsky again emailed Davidson to complain about Holtzman's "lack of people skills and willingness to say anything necessary to get her way" and that "[t]his [was]

8

retaliatory harrassment [sic] for my involving [Human
Resources];" Davidson told Rosetsky that they could talk next
week but that Rosetsky should concentrate on getting her work
done and was spending "too much time focusing on this conflict;"
Rosetsky replied that she had been doing her work but Holtzman
had been interrupting her "with lengthy e-mails- and requests for
project plans for things that I have already completed or am in
the midst of- which she ignored for the whole year," id. Ex. 28;

      (x)  On November 9, 2006, Rosetsky used NBME's Values
Hotline to lodge a complaint about Holtzman in which Rosetsky
stated that after her November 7, 2006 meeting with Holtzman and
Davidson, Holtzman "proceeded to call my co-workers into her
office to coerce them into making negative statements about
me...[s]he then tried to turn a situation which involved her
mistreatment of me, into a disciplinary action for me, telling me
to 'stay in my seat' and 'not talk to anyone'...[and] make a
chart and give her a minute to minute recording of what I do
during the day...if I did not comply, she was going to issue a
formal 'Performance Plan' for me," id. Ex. 30;

      (y)  On November 13, 2006, Rosetsky forwarded excerpts
of an email by Holtzman to Davidson, pointing out that Holtzman
had required Rosetsky to not discuss their problems with others

9

**10a.**

at NBME, to keep a daily log of time spent on projects to be sent

to Holtzman by Friday's end of business, and to direct all

questions to Holtzman or others in a "nonconfrontational manner,"

id. Ex. 31;

(z)  The next day, Holtzman sent another email in which

she reprimanded Rosetsky for failing to send Holtzman her daily

logs, and again requested those logs for the previous two weeks,

id;

(aa) Rosetsky responded, copying Davidson on the email,

"I was planning to discuss with HR how I am being singled out to

do this - I believe, in retaliation for my coming to them for

assistance...Your 'warning' to me that you will put a performance

plan in place- I also take that as retaliation - in as far as

there has been nothing wrong with my work performance," id;

(bb) On November 16, 2006, Rosetsky and Holtzman had a

conversation in which they discussed potentially moving Rosetsky

to a different position; later that day, Rosetsky emailed

Holtzman,

> You told me that the way NBME works I would
> have to start as a 'Production Assistant' and
> work my way up.  I am concerned that my 10
> years of work experience and my education are
> not being taken into account.  It appears
> that other people, some younger and with less
> education and experience, are being hired

10

**11a.**

into the organization in positions that are
higher than Production Assistant...Some are
being promoted without having to apply for
position...I would appreciate a more specific
explanation as to why I am not qualified in
your department for any other position other
than Program or Production Assistant.

Id. Ex. 32;

(cc) Holtzman replied, "I suggest you focus on
performing your current role well so that you can be considered a
strong candidate for other roles.  Once you have done that
consistently and successfully, I will be happy to discuss your
career development," id;

(dd) On November 21, 2006, Holtzman and Davidson
presented Rosetsky with her year end performance review, in which
Rosetsky received a rating of "satisfactory," id. Ex. 35;

(ee) The performance review was partly compiled from
comments by NBME staff who had worked with Rosetsky; Holtzman had
requested and received comments from co-workers regarding
Rosetsky in October of 2006; all those who commented
substantively on Rosetsky's performance lauded her technical
abilities but many faulted her interpersonal skills, id. Ex. 34;

(ff) In the performance review, Holtzman noted that
Rosetsky had "excellent technical skills" and was "willing to
share her knowledge with others," but that Holtzman worried that

11

Rosetsky was "more interested in spending her time solving the technical challenges posed by the project without considering whether the application will be used broadly enough to justify the time she is investing;" furthermore, Holtzman stated that Rosetsky

> became confrontational and unprofessional in regard to dealing with her frustration about working on [the tutorial slides project] in a support role...Her communication has become more and more negative over the past few weeks, and despite constant reminders, she has continued to vent her frustrations and complaints to others inside and outside the unit...[creating] an uncomfortable and nonproductive work environment...If she continues to object to performing the duties within her job description and to disrupt the work environment...she will be subject to disciplinary action up to and including termination.

Id. Ex. 35;

(gg) Rosetsky, Holtzman, and Davidson were supposed to meet and discuss the performance review, but Rosetsky declined; she stated, "I am not going to sit and listen to some unethical example of the Peter Principle tell lies about me," id. Ex. 37;

(hh) That same day, Rosetsky filed another complaint about Holtzman through the NBME Values Hotline; in this complaint, Rosetsky stated,

> Kathy is continually disrespectful to me to

12

13a.

the point of making faces at me if I walk in
her office...She has not given me any work to
do other than clerical work- which is way
below my skill level- I believe to belittle
me.  She has showed resent [sic] at my
attempts to be innovative for the
department...Finally Kathy gave me a
performance review which was very disturbing
to me...She has called my co-workers into her
office and tried to get them to write down
negative things about me.  She instructs
others not to talk to me - and has told me to
'stay in my seat and not talk to anyone.'

Id. Ex. 30;

(ii) On November 22, 2006, Rosetsky emailed Holtzman,

Since I received so much negative feedback
about the databases that I built and created,
and as in your words, I was not hired to do
this, I am not going to complete any further
work on them.  This will avoid another poor
performance rating for me in the future -- as
you lack the qualifications to evaluate my
skills in this area...if you would like me to
continue my innovative work, I expect to be
compensated for this level of performance.
This would require a change to an information
technology type-title, at a salary of at
least $60,000.

Id. Ex.38;

(jj) On November 27, 2006, Davidson sent a letter to

Rosetsky terminating her effective December 1, 2006, because

"[y]our communications to your supervisor and me over the past

few weeks make it clear that you are not interested in performing

the duties of Program Assistant as defined by the NBME.  The job

13

that you proposed in your email of November 22, 2006, is not available and will not be offered to you," id. Ex. 39;

(kk) Rosetsky claims that through Holtzman's and Davidson's actions, NBME discriminated against her on the basis of age, violating 29 U.S.C. § 623(a) and 43 Pa. Cons. Stat. Ann. § 955, and then retaliated against her when she complained about it, violating 29 U.S.C. § 623(d);

(ll) Since Rosetsky does not have direct evidence of discrimination and relies on circumstantial evidence, we must apply the burden shifting analysis from McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981);[2]

(mm) We now consider each claim in turn;

(nn) Rosetsky asserted that she was discriminated against on the basis of age because Holtzman reduced her

---

[2]Under this approach, the plaintiff must first prove a prima facie case of discrimination. McDonnell-Douglas, 411 U.S. at 802; St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). If the plaintiff succeeds, then the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the [adverse employment action.]" McDonnell-Douglas at 802. Then the burden shifts back to the plaintiff to show the reason proffered is a pretext for discrimination. Id. at 804.
    The ADEA and PHRA claims are coextensive and subject to the McDonnell-Douglas burden-shifting analysis. Tomasso v. Boeing Co., 445 F.3d 702, 704 (3d Cir. 2006); Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

14

responsibilities, giving her demeaning clerical work to do, while she gave other, younger employees more substantive projects and promotions, Def. Mem. at 4-7;

(oo) To establish a prima facie age discrimination claim under the ADEA, a plaintiff must show that she (1) is at least forty years old, (2) qualified for the position, (3) subject to an adverse employment action and that (4) the circumstances of the adverse action permit an inference of discriminatory action, see Anderson v. Consolidated Rail Corp., 297 F.3d 242, 249 (3d Cir. 2002);

(pp) NBME argues that Rosetsky cannot establish the prima facie case for age discrimination because Holtzman's directives to do clerical work do not amount to an adverse employment action;

(qq) An adverse employment action involves "a significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits," Weston v. Pennsylvania, 251 F.3d 420, 430-31 (3d Cir. 2001);

(rr) Rosetsky contends that Holtzman's "failing to provide [her] with job assignments which matched her job Role Profile [was] an adverse employment action against [Rosetsky],"

15

16a.

Pl.'s Mem. at 4; but the Role Profile stated that her
responsibilities included "identify[ing] training/documentation/
support needs" specifically of the Director of Test Development,
i.e., Holtzman, Pl.'s Mem. Ex. C at 952; identifying Holtzman's
support needs must include clerical work; furthermore, not all of
the tasks that Holtzman assigned her were clerical in nature,
Def.'s Mem. Ex. 18 (permitting Rosetsky to take the first shot at
editing the tutorial slides); Def.'s Mem. Ex. 22 (assigning her
two database projects); Holtzman's decision to assign Rosetsky
clerical work does not involve "a significant change in
employment status" because none of Rosetsky's wages, benefits, or
perquisites were affected as part of those assignment; she
obviously did not like the work she was given by her supervisor,
but the assignment of what she regarded as scut work, in and of
itself, cannot be an adverse employment action within the ADEA's
ambit;

(ss) Even assuming that assigning of clerical work to
Rosetsky was an adverse employment action, Rosetsky cannot
establish the prima facie case because she cannot establish facts
sufficient to permit an inference of age discrimination;

(tt) When the plaintiff cannot present direct evidence
of age discrimination, it is common practice to establish the

16

fourth prong of the prima facie test by showing that similarly
situated, younger employees were treated differently by the
employer, Anderson, 297 F.3d at 249;

(uu) Rosetsky testified that other employees both older
and younger performed clerical work, Pl.'s Dep. at 81-83; she
cannot point to any circumstances that suggest that Holtzman's
assigning such work to Rosetsky was motivated by Rosetsky's age;
indeed, there is no individual she can point to who is similarly
situated to whom Holtzman could have but did not assign such
work;

(vv) Therefore, Rosetsky fails to establish the third
and fourth prongs of the prima facie case for age discrimination,
and we will grant summary judgment against this claim;

(ww) Rosetsky also asserted a retaliation claim against
NBME, alleging that NBME terminated her because she complained
about Holtzman's alleged age discrimination;

(xx) To establish a prima facie case for retaliation
under the ADEA, a plaintiff must show she was (1) engaged in a
statutorily protected activity, and (2) suffered an adverse
employment action that was (3) causally connected to her
protected activity, Shaner v. Synthes, 204 F.3d 494, 500-01 (3d
Cir. 2000);

17

18a.

(yy) Rosetsky can establish the prima facie case for retaliation; she testified that when she went to meet with Davidson she repeatedly told her she believed that she was being discriminated against on the basis of her age, Pl.'s Dep. at 306; it was as the flurry of complaints and recriminations between Rosetsky and Holtzman reached their zenith that Rosetsky was finally discharged, Def.'s Mem. Ex. 26-32, 38-39; this establishes all three prongs of prima facie test on the basis of her personal knowledge and testimony;

(zz) But the analysis does not end there; once the plaintiff has establish the prima facie case, the defendant may articulate a nondiscriminatory reason for the termination, McDonnell-Douglas at 802; here, NBME stated that its reason for terminating Rosetsky fell broadly under the rubric of insubordination; NBME's official stated reason was that Rosetsky was "not interested in performing the duties of a Program Assistant as defined by NBME," Def. Mem. Ex. 39; NBME also points to various directives which Rosetsky failed to follow, such as Rosetsky's not complying with Holtzman's request to keep a daily log, id. Ex. 23, 24; she continued to discuss her problems with Holtzman with co-workers after being told to cease doing so, id. Ex. 27; and she failed to address her issues with Holtzman in a

18

"nonconfrontational manner" by continuing to spar with her

supervisor over longstanding problems, id. Ex. 31, 38;

(aaa)  Once the defendant has offered a

nondiscriminatory reason for terminating the plaintiff, the

burden shifts back to the plaintiff to show the proffered reason

is a pretext, McDonnell-Douglas at 804; the plaintiff can do this

by pointing to evidence from which a reasonable fact-finder could

either "(1) disbelieve the employer's articulated legitimate

reasons; or (2) believe that an invidious discriminatory reason

was more likely than not a motivating or determinative cause of

the employer's action," Fuentes v. Perskie, 32 F.3d 759, 764 (3d

Cir. 1994); under the Fuentes test, the evidence plaintiff

proffers must meet a heightened "level of specificity" to survive

summary judgment. Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d

Cir. 1998); if the plaintiff satisfies either prong of the

Fuentes test, she survives summary judgment. Keller v. Orix

Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en

banc);

(bbb)  Rosetsky asserts that NBME's reasons could be

found to be "unworthy of credence" because the defendant has

failed to specify any acts that amount to insubordination,  Pl.'s

Mem. at 10 (citing Fuentes, 32 F.3d at 765);

19

20a.

(ccc)  "Insubordination" is "[t]he fact or condition of being insubordinate; absence of subordination or submission; resistance to or defiance of authority; refusal to obey orders; refractoriness, disobedience," VII Oxford English Dictionary 1053 (2d ed. 1989); Holtzman and Davidson asked Rosetsky to keep daily logs, cease discussing certain issues with other NBME staff, and address issues without being confrontational, each of which she refused and failed to do, and this constitutes insubordination;

(ddd)  Rosetsky responds in part to NBME's three examples of her insubordination;

(eee)  Rosetsky testified that she did not keep daily logs and reconstruct the amount of time she allotted to various projects because she had not kept nor was required to keep contemporaneous records of the time spent on her activities and her coming up with a task by task time breakdown would be "impossible," and that it was a "ridiculous request," Pl.'s Dep. at 283-86; however, Holtzman's initial request was for her to keep such records "from here on out" and had Rosetsky started when told she would not have had to reconstruct her time records for weeks in the past, Def. Mem. Ex. 23;  she failed to follow her supervisor's orders when she did not start keeping the daily logs of her work, and this amounted to insubordination;

20

(fff)  Rosetsky also continued to discuss her problems with Holtzman with her co-workers, specifically with Faith Balsama, id. Ex. 27; Rosetsky contends that this kind of treatment amounts to "elementary school" and she should not be subject to it, id. Ex. 31; regardless of whether or not the players in this drama were acting like children, Rosetsky was told not to discuss this matter with others in the department but she did anyway;

(ggg)  Finally, Rosetsky claims that she continued to complain to Holtzman and Davidson because she was merely "expressing her frustration with Defendant's refusal to permit Plaintiff to perform her job," Pl.'s Mem. at 11; but her employer specifically asked her to address her issues in a "nonconfrontational manner;" the record clearly establishes that the growing animosity between Holtzman and Rosetsky was affecting the work environment, yet Rosetsky persisted in waging a pitched battle against Holtzman's treatment of her, ceaselessly confronting Holtzman whenever Rosetsky perceived a slight;

(hhh)  Neither the ADEA nor the PHRA gives employees a right to have a decent boss, let alone a likeable one; one may look upon Holtzman's behavior as reprehensible, belittling, or, overall, bad management, but none of these violated Rosetsky's

21

22a.

rights under the ADEA or under the PHRA;

(iii)  Furthermore, Rosetsky offers no other proof that NBME's proffered reasons are pretext; in fact, her entire argument relies on pointing to these proffered reasons and saying they are lies; but at this (late) stage of the litigation, the plaintiff must do more than that; she must provide "specific facts" for why a reasonable factfinder could believe the proffered reasons are false, see Fed. R. Civ. P. 56(e); she fails to do so, and, therefore, we must grant summary judgment to defendant on this claim as well;

(jjj)  As we have resolved the questions relating to summary judgment, we do not reach any of the other issues raised in defendant's motion;

It is hereby ORDERED that:

1.    Defendant National Board of Medical Examiners of the United States of America's motion for summary judgment is GRANTED;

2.    The Clerk of Court shall CLOSE this case statistically.

BY THE COURT:

/s/ Stewart Dalzell, J.

22

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANE ROSETSKY | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. 07-cv-3167 |
| | : | |
| v. | : | |
| | : | |
| | : | Honorable Stewart Dalzell, J. |
| NATIONAL BOARD OF MEDICAL | : | |
| EXAMINERS OF THE UNITED STATES | : | |
| OF AMERICA, INC. | : | |
| | : | |
| Defendant. | : | |

### NOTICE OF APPEAL

Notice is hereby given that Plaintiff hereby appeals to the United States Court of Appeals

for the Third Circuit from the final judgment and order dismissing her case entered in this action

on February 19, 2008 (at docket item No. 20).

Respectfully submitted,

TIMOTHY M. KOLMAN & ASSOCIATES

By:    /s/ Rufus A. Jennings, Esquire
Rufus A. Jennings, Esquire
225 N. Flowers Mill Road
Langhorne, PA 19047
(215) 750-3134

Dated: March 19, 2008

**24a.**