Received and Filed
08-1827
08/29/08
Marcia M. Waldron,
Clerk

Case: 08-1827    Document: 00312042952    Page: 1    Date Filed: 08/29/2008

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

## CASE NO. 08-1827

---

### Diane Rosetsky

Appellant

v.

### National Board of Medical Examiners
### of the United States of America, Inc.

Appellee

---

On Plaintiff's Appeal from The February 19, 2008 Order and Opinion of the Honorable Stewart Dalzell, Judge of the Eastern District of Pennsylvania, Granting Defendant's Motion for Summary Judgment on claims raised by Plaintiff under the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq., and the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. §951 et seq. and entering Judgment in favor of the Defendant employer, National Board of Medical Examiners, Appellee herein.

---

## BRIEF FOR APPELLEE

Bebe H. Kivitz, Esquire
I.D. No. 30253
Dolores M. Troiani, Esquire
Troiani/Kivitz, L.L.P.
38 North Waterloo Road
Devon, Pa. 19333
Telephone: 610-688-8400

Attorneys for Appellee

# CORPORATE DISCLOSURE STATEMENT

Appellee, the National Board of Medical Examiners of the United States of America, Inc., is a nonprofit corporation that develops examinations for medical schools, physicians and other health professionals. It has no parent organization nor does it have any corporate affiliate with an interest in this litigation.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................... i

TABLE OF AUTHORITIES ....................................................................... iv

STATEMENT OF RELATED PROCEEDINGS .................................................1

COUNTER STATEMENT OF ISSUES PRESENTED.........................................2

COUNTER STATEMENT OF THE CASE.......................................................4

COUNTER STATEMENT OF FACTS ...........................................................9

SUMMARY OF ARGUMENT ................................................................. 14

SCOPE AND STANDARD OF REVIEW ON SUMMARY JUDGMENT.......... 17

SUMMARY JUDGMENT WAS PROPERLY GRANTED ON
APPELLANT'S CLAIMS OF AGE DISCRIMINATION AND
RETALIATION ................................................................................. 19

    A.    Appellant did not establish a prima facie case
        of age discrimination ........................................................... 19

    B.    Appellant failed to show that the termination of her
        employment at the NBME was retaliatory......................................... 26

    C.    Appellant has not pointed to any evidence
        or circumstance to demonstrate that the
        legitimate reasons for discharge advanced
        by NBME were pretextual................................................. 30

SCOPE AND STANDARD OF REVIEW OF DISTRICT COURT'S
DISCOVERY ORDER ......................................................................... 36

THE DISTRICT COURT JUDGE DID NOT ABUSE HIS DISCRETION
WHEN HE DECLINED TO EXTEND THE DISCOVERY DEADLINE............ 37

SCOPE AND STANDARD OR REVIEW REGARDING
APPELLANT'S FAILURE TO EXHAUST ADMINISTRATIVE
REMEDIES ........................................................................................ 41

APPELLANT'S CLAIMS UNDER THE PENNSYLVANIA HUMAN
RELATIONS ACT MUST BE DISMISSED FOR FAILURE TO
EXHAUST ADMINISTRATIVE REMEDIES........................................ 42

CONCLUSION................................................................................... 44

CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 32(7) and
LAR 31.1(c) ...................................................................................... 45

CERTIFICATE OF BAR MEMBERSHIP............................................ 46

CERTIFICATE OF SERVICE ............................................................ 47

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Consolidated Rail, 297 F.3d 242, 247 (3rd Cir. 2002)........................ 20

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)................................... 17

Billet v. Cigna Corp., 940 F.2d 812 (3rd Cir. 1991)............................... 20, 30, 32, 34

Burgh v. Borough Council of the Borough of Montrose, 251 F.3d
465 (3rd Cir. 2001) ..................................................................... 41, 42

Burlington Indus. Inc. v. Ellerth, 524 U.S. 742 (1998) ........................................ 24

Clay v. Advanced Computer Applications, Inc., 559 A.2d 917 (Pa. 1989) ........... 42

Connors v. Chrysler Financial Corp., 160 F.3d 971 (3rd Cir. 1998)...................... 21

Eli Lilly and Co., Inc. v. Generix Drug Sales, Inc., 460 F.2d
1096 (3rd Cir. 1972) ................................................................. 36, 37, 39

Farrell v. Planters Lifesavers Co., 206 F3d 271 (3rd Cir. 2000) ........................... 29

Fasold v. Justice, 409 F.3d 178 (3rd Cir. 2005)..................................................... 19

Fuentes v. Perksie, 32 F.3d 759 (3rd Cir. 1994)............................... 17, 18, 31, 34

Gallas v. Supreme Court of Pa., 211 F.3d 760 (3rd Cir. 2000) ............................. 37

Gray v. York Newspapers, Inc., 957 F.2d 1070 (3rd Cir. 1992) ...................... 21, 24

In Re Fine Paper Antitrust Litigation, 685 F.2d 810 (3rd Cir. 1982) ............... 36, 37

Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101 (3rd Cir. 1997) ...................... 31

Leboon v. Lancaster Jewish Community Center Assoc., 503 F.3d
217 (3rd Cir. 2007)..................................................................... 29

Lee v. City of Philadelphia, 2008 U.S. Dist. Lexis 52820
(E.D. Pa. 2008) ................................................................................ 42

Matsushita Elec. Industr, Co. v. Zenith, 475 U.S. 574, 586 (1986) ....................... 17

McDonnell-Douglas v. Green, 411 U.S. 792 (1973) ................................. 15, 19, 30

Reeves v. Sanderson  Plumbing Products, Inc., 530 U.S. 133 (2000)................... 19

Roadcloud v. Pa. Bd. Probation & Parole, 2006 U.S. Dist. Lexis 51246
(E.D. Pa. 2006) ................................................................................ 42

Sarullo v. United States Postal Service, 352 F.3rd 789 (3rd Cir.2003)..................... 30

Simpson v. Kay Jewelers, 142 F.3d 639 (3rd Cir. 1998)......................................... 31

Smathers v. Multi-Tool, Inc. 298 F.3d 191 (3rd Cir. 2002)..................................... 17

Weston v. Commonwealth of Pa. Dept. of Corrections, 251 F.3d 420
(3rd Cir. 2001).................................................................................. 24

**Other Authorities**

29 U.S.C. §621 ................................................................. 2, 4, 14

29 U.S.C. 623(a)(d) ............................................................... 19

43 Pa.Cons.Stat.Ann. §951 .......................................... 2, 4, 14

43 Pa.Cons.Stat.Ann. §955 ................................................... 19

43 P.S. §962(c) ...................................................................... 42

http://www.paed.uscourts.gov/documents/procedures/dalpol1.pdf ................. 7, 39

## STATEMENT OF RELATED PROCEEDINGS

Appellee, the National Board of Medical Examiners, is not aware of any pending cases or other proceedings related to this appeal nor has this case previously been before this Court.

## COUNTER STATEMENT OF ISSUES PRESENTED

1.  Should the district court's grant of summary judgment be affirmed where the court, finding no genuine issues of material fact, and finding no evidence in support of even a prima facie case of age discrimination, granted summary judgment in favor of defendant-employer National Board of Medical Examiners, on Plaintiff-Appellant's claims of discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. §951?

2.  Should the district court's grant of summary judgment in favor of the National Board of Medical Examiners be affirmed on Plaintiff-Appellant's claims of retaliation where the evidence, including the admissions of Plaintiff, showed that Plaintiff was discharged from her employment for repeated acts of insubordination and where Plaintiff proffered no evidence of pretext and no reason to disbelieve her employer's articulated non-discriminatory reasons for her discharge?

3.  Did the district court abuse its discretion when it denied Appellant's request for an extension of the discovery period where Plaintiff did not make a good faith effort to comply with court ordered discovery and where the

court's order and published procedures make it clear that discovery deadlines will not be extended absent exceptional circumstances?

4.   Did Plaintiff fail to exhaust her administrative remedies under the Pennsylvania Human Relations Act?

## COUNTER STATEMENT OF THE CASE

This is an appeal from the grant of summary judgment in favor of the employer, the National Board of Medical Examiners (NBME), on claims of age discrimination and retaliation under the Age Discrimination and Employment Act, 29 U.S.C. §621 et seq. and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §951 et seq.

NBME is a nonprofit organization that develops examinations for medical schools, physicians and other health professionals. Appellant, Diane Rosetsky, is a forty-nine (49) year old woman who was formerly employed by NBME as a Test Development Program Assistant. Rosetsky was discharged from this employment following numerous instances of insubordination in which she admittedly refused to performed her job duties (R. 455a, 458a); refused to keep track of her project time as requested by her supervisor (R. 282-285a, 319a); declined to meet with her supervisor whom she called "an unethical example of the Peter Principle" (R. 287a, 352a); demanded a supervisory change and new work cubicle (R. 319a); made derogatory comments about her supervisor to co-workers, who complained that Rosetsky was a disruptive and negative influence (R. 287a, 289a, 297-298a); described, in e-mail correspondence, an NBME vice president as "the guy with the little white hot pants" (R. 228a, 449a); and otherwise engaged

in an escalating course of unprofessional conduct and "outright refusal to take instruction from her supervisor or perform her job responsibilities." (R. 340a; see R. 518a).

Rosetsky, an at-will employee (R. 148-149a), was given notice on November 27, 2006 that she would be discharged from her NBME employment effective December 1, 2006. (R. 358a). Eight months later, and without first exhausting her remedies under the Pennsylvania Human Relations Act, Rosetsky, on August 2, 2007, filed this lawsuit in which she alleged violations of both state and federal law. She complained, inter alia, that NBME engaged in a pattern of age discrimination by assigning her clerical duties, by denying her a promotion, and by giving her the "smallest possible salary increase." (R. 32a). The evidence on summary judgment established through documents, affidavits, and Rosetsky's sworn deposition testimony that she had voluntarily withdrawn her applications for promotion (R. 254-255a, 260a); that she did not know if she was qualified for the position (R. 272a); that employees younger and older than she also performed clerical duties (R. 18a, 420a); that she understood that clerical duties were part of her support role in the organization (R. 447a ); that she was also assigned non-clerical tasks involving database expertise and user testing (R. 470a); and that she was assigned but refused to perform duties

that were part of her role profile (R. 458-459a). Moreover, although Rosetsky was displeased with her 2% raise, the salary increment that would have been awarded to her had her employment not been terminated, it was nonetheless commensurate with the NBME standard for employees who, like Rosetsky, received evaluations of "satisfactory." (R.39a, 339-340a, R. 458a). Further, Ms. Rosetsky expressly admitted that her discharge did not result in the retention, reassignment or hiring of a younger person to perform the tasks previously assigned to her. Rather, she acknowledged that her responsibilities were divided between two NBME employees older than she. (R. 104a #80, R. 535, admission #80).

The document discovery, the admissions of Rosetsky, and the deposition testimony considered by the court on summary judgment were developed in accordance with the discovery deadlines set at the time of the Rule 16 conference. The conference was held before the Honorable Stewart Dalzell on September 7, 2007, at which time Judge Dalzell issued his case management order. Pursuant to this order, counsel for Plaintiff and Defendant were directed that "[b]y November 16, 2007, parties shall COMPLETE all discovery." (R. 45a, *emphasis in original*).

Judge Dalzell's published procedures, which are available on the district court's website, also make it clear that he will not grant discovery

extensions except under the most unusual circumstances. (http://www.paed.uscourts.gov/documents/procedures/dalpol1.pdf; Judge Stewart Dalzell, Continuances and Extensions, #1, General Policy, "discovery deadlines and trial dates set at the Rule 16 conference are only changed for weighty cause shown.")

Consistent with the November 16 discovery deadline set by the court, NBME responded to interrogatories, timely produced documents, and conducted the deposition of Plaintiff on October 24, 2007. Plaintiff's counsel served interrogatories and document production requests, but noticed no depositions whatsoever until November 8, 2007. Then, without checking the availability of counsel or witnesses, Plaintiff's counsel noticed five depositions to be held at two hour intervals on November 15, 2007, the day before the court-ordered discovery deadline. Under Plaintiff counsel's proposed scheme, depositions were to be held without break or lunch beginning at 9:00 a.m., with the fifth deposition to commence at 5:00 p.m. (R. 60-65a).

Immediately upon her receipt of these deposition notices, counsel for NBME advised Plaintiff's counsel that she was unavailable because of depositions in another matter on November 15, 2007, and that the one week notice given her in this case was not only unreasonable, but failed to take

into consideration the availability of any of the deponents. NBME counsel also identified the case and docket number of the matter which was the basis for her unavailability on November 15, 2007, (R. 67a) and asked Plaintiff's counsel immediately to identify other dates within the discovery deadline. *Id.* Plaintiff's counsel failed to identify additional dates and instead filed a Motion to Extend Discovery.

Counsel's motion to extend discovery, filed on November 14, 2007, offered no explanation as to why counsel waited until the eve of the discovery deadline to notice five depositions; nor did it explain his failure to notice depositions earlier. (R. 47-50a). Upon his finding of "no good cause," Judge Dalzell declined to extend the discovery deadline by order entered December 15, 2007. (R. 51a).

In an effort to gain reconsideration of Judge Dalzell's denial of a discovery extension, Plaintiff then filed a motion to compel depositions. That motion was also denied upon the lower court's finding that Plaintiff's counsel had provided "no explanation for why he noticed depositions so late." Judge Dalzell further concluded that "one week's time is not reasonable notice for five depositions." (R. 84a.).

Rosetsky now claims that the court abused its discretion when it declined to extend the discovery deadline.

## COUNTER STATEMENT OF FACTS

Rosetsky was first employed by NBME in a temporary capacity beginning on September 27, 2005. ( R. 142a) In accepting this employment, Rosetsky acknowledged receipt of NBME's policy on proprietary information and agreed to abide by this policy which required any person leaving its employ to return all information, documents, memoranda, reports, records and programs, whether confidential or not, to NBME. Rosetsky further agreed not to remove any such materials, or any copies of such materials, from the NBME office. (R.145a, 149a). Although the agreement continued in effect when Rosetsky later became a permanent NBME employee (R.148-149), Rosetsky failed to honor her obligations under the agreement. On numerous occasions, Rosetsky was asked to return NBME materials that she had taken home without her supervisor's permission (R. 305a, 518a). At her deposition, conducted almost one year after her discharge from NBME, Rosetsky admitted that she had retained, and continued to retain, computer files belonging to NBME. (R. 435a).

On December 16, 2005, Rosetsky was offered full time employment, with benefits, in the newly created position of Program Assistant in Test Development (R. 148-149a). Rosetsky was the first and only person to occupy this position (R. 340a). As before, she was supervised by Kathleen

Holtzman, who was seven years her senior (R. 417a). Of the seven employees supervised by Holtzman, five, including Rosetsky, were over the age of forty. Of the five employees over age forty, who received year-end evaluations in 2006, only Rosetsky was given an evaluation of satisfactory; the others were rated "very good" or "outstanding." Based on their superior evaluations, these employees received greater percentage salary increases than Rosetsky would have received. (R. 339-340a.)

In her evaluation comments, Holtzman, Rosetsky's supervisor, observed that Rosetsky's conduct was disruptive and confrontational, that she had difficulty working with a team, and that Rosetsky was more interested in developing database applications "without considering whether the application will be used broadly enough to justify the time she is investing." Holtzman further observed that Rosetsky "needs to learn to work with her supervisor . . . to make sure that the effort required to implement the [database] application in a particular way is consistent with the eventual benefit to Test Development and NBME." (R. 336a). When Rosetsky was repeatedly asked to record and report the time she spent on projects, she refused to do so, arguing that the request was "ridiculous" and "impossible." (R. 282-285a, 319-320a, 460a, 471a).

Sometime in October, 2006, Rosetsky became dissatisfied with Ms. Holtzman as a supervisor. According to the complaint she filed with NBME "values hotline," Rosetsky's dissatisfaction "basically started" from her supervisor's rejection of Rosetsky's attempt to edit project material. (R. 316a). Rosetsky vehemently disagreed with her supervisor's editorial decisions (R. 426a). In fact, Rosetsky, who reported to Holtzman, told Holtzman that she not only disagreed with Holtzman's editing decisions, but that Holtzman did not have the skill to do the job. *Id.* Rosetsky further admitted that she openly canvassed the Test Development Unit to see if other NBME personnel agreed that her edits were better than those of Holtzman, the unit supervisor with numerous years of editing experience at NBME. (R. 426a, 466-467a, 494a).

Although Holtzman offered to meet with Rosetsky to explain the basis for her editing decisions and to convey her expectations of teamwork, (R. 492a-494a), Rosetsky persisted in her self-described "battle" and "sparring" to undermine Holtzman with other employees (R. 278a, 300a), to denigrate her abilities (R. 469a, see 447a), and to foster conflict within the organization. (R. 289a, 297-298a). When other managers within Test Development were asked to provide performance feedback for Rosetsky, they observed that Rosetsky "lacks professionalism," "alienates others with

her attitude," and was not "polished in the way she speaks to people." (R. 328a, 332a).

Before her discharge, Rosetsky was repeatedly asked by Human Resources to "PLEASE concentrate on getting your work done" and not on her disagreements with her supervisor. (R. 302a, 322a, see also 292-293a). Rather than meet with her supervisor as she was encouraged to do (R. 276a, 289a, 293a, 352a), Rosetsky became increasingly insubordinate by refusing to perform assigned tasks and by telling her supervisor, Ms. Holtzman, and her co-workers, that Holtzman "lacked[ed] the qualifications to evaluate my skills." (R. 455a). In an e-mail to Holtzman on November 22, 2006, Rosetsky expressly refused to perform work on two database projects that had been assigned to her. (R. 354a). She further demanded a $10,000.00 raise and a new job title. (R. 354a, 456-457a).

On November 27, 2006, NBME's Human Resources Director told Rosetsky that the job Rosetsky had demanded in her November 22 e-mail "is not available" and would not be offered to her. Rosetsky was further advised that inasmuch as she had made it clear that she was not interested in performing the duties of her actual position, she would be discharged effective December 1, 2006. (R. 518a). On November 29, 2006, two days before her discharge became effective, Rosetsky forwarded to an NBME

co-worker a newspaper article about a computer technician who killed his supervisor. (R. 324-325a, 428a).

The district court summarily denied Rosetsky's claims of age discrimination and retaliation.  This appeal followed.

## SUMMARY OF ARGUMENT

Summary judgment in favor of employer, the National Board of Medical Examiners (NBME), should be affirmed. Appellant, Diane Rosetsky, failed to establish a prima facie case on her claims of age discrimination and retaliation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 et seq., and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cont. Stat. §951 et seq. Rosetsky also failed to exhaust her state remedies under the PHRA.

Rosetsky suffered no adverse employment action. She claims that some of the duties assigned to her, such as correcting typographical and grammatical errors, were "clerical," and therefore "beneath" her. Rosetsky admits that she knew when she was hired as a program assistant that her role was supportive, not supervisory or managerial. She acknowledges that persons both older and younger than she also performed clerical duties. Although she asserted in her complaint that she was denied a promotion for which a younger person was hired, she testified that her allegation was in error, because she did not know who, if anyone, was hired for the position. She also testified that she had applied for that and another position at NBME, but had then withdrawn her applications for both of those positions, even before interviews occurred.

Rosetsky admitted that she openly refused to perform non-clerical duties that were unquestionably part of her role at NBME. She received notice, and was discharged from NBME employment, for unprofessional conduct and insubordination based on "her outright refusal to take instruction from her supervisor or perform her job responsibilities." (R.340a, 354a, 518a). Rosetsky admitted that she had retained computer files belonging to NBME even after being asked to return all NBME property. It was later discovered that she had also lied on her application for employment by stating that her position at Penn was eliminated, when in fact her employment had been terminated for cause.

Under the *McDonnell-Douglas* burden shifting analysis, Rosetsky failed to show that the legitimate reasons for discharge proffered by NBME were fabricated or pretextual.

Rosetsky's counsel waited until the week before the close of discovery and then unilaterally scheduled five depositions to be taken at two hour intervals, without break, on the day before the court-ordered discovery deadline. Counsel for NBME was unavailable on that day due to previously-scheduled depositions in another case. Rather than select another day within the discovery deadline, Rosetsky petitioned the court for an extension of the discovery deadline. The  trial court did not abuse its discretion by denying

Rosetsky's request where it found that Rosetsky's counsel had offered no explanation "for why he noticed depositions so late." (R. 83-84a).

## SCOPE AND STANDARD OF REVIEW

This Court's review of the grant of summary judgment is plenary. Smathers v. Multi-Tool, Inc. 298 F.3d 191 (3rd Cir. 2002). Under Fed. R. Civ. P. 56 (c), summary judgment should be rendered if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. Once the National Board of Medical Examiners, as the moving party and Appellee herein, has been found to meet this standard, the burden falls to Appellant to make a showing sufficient to establish the existence of every essential element of her case. *Fuentes v. Perksie*, 32 F.3d 759, 762 (3rd Cir. 1994). Appellant may not, however, rest on conclusory allegations and denials. *Id.* at 764. As the party opposing summary judgment, Appellant "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industr, Co. v. Zenith*, 475 U.S. 574, 586 (1986). The mere existence of factual dispute does not undermine the grant of summary judgment. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1986). If the evidence offered by the non-moving party is merely colorable, or not sufficiently probative, summary judgment is proper and should be granted. *Id.* at 249-250.

Further, to defeat summary judgment in this age discrimination in employment case, Appellant must point to sufficient cognizable evidence from which a reasonable jury could infer that *each* of the non-discriminatory reasons proffered by her former employer was either a *post hoc* fabrication or did not actually motivate the employment action. *Fuentes v. Perksie*, 32 F.3d at 762  (*emphasis in original*).

## SUMMARY JUDGMENT WAS PROPERLY GRANTED ON APPELLANT'S CLAIMS OF AGE DISCRIMINATION AND RETALIATION

Rosetsky complains that NBME discriminated against her based on age and then retaliated against her by terminating her employment when she complained about it to her supervisor and to the NBME Human Resources Director.   Rosetsky asserts that NBME's alleged discriminatory and retaliatory conduct violated the Age Discrimination in Employment Act (ADEA) and the Pennsylvania Human Relations Act (PHRA).  29 U.S.C. 623(a)(d), 43 Pa. Cons. Stat. §955.

Claims of age discrimination under the ADEA and PHRA are evaluated under the same legal standard and are subject to the *McDonnell-Douglas* burden shifting analysis.  *McDonnell-Douglas v. Green*, 411 U.S. 792 (1973);  *Fasold v. Justice*, 409 F.3d 178 (3rd Cir. 2005).   In order to establish age discrimination, Rosetsky must show that her age "actually motivated" or "had a determinative influence" on an adverse employment decision.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000);  *Fasold v. Justice*, 409 F.3d at 184.

### A.  Appellant did not establish a prima facie case of age discrimination.

Under *McDonnell-Douglas*, Rosetsky must first establish a prima facie case of age discrimination.  To establish a prima facie case under the

ADEA, Rosetsky was required to show that (1) she is over forty years old and therefore a member of the protected class; (2) that she was qualified for the position at issue; (3) that she suffered an adverse employment decision; and (4) that she was replaced by an individual sufficiently younger than she to permit an inference of age discrimination. *Anderson v. Consolidated Rail*, 297 F.3d 242, 247 (3rd Cir. 2002). Here, Rosetsky has failed to establish that she was subject to an adverse employment action based on her age and that she was replaced by a younger person. In fact, Rosetsky has admitted that the employees who took over the duties previously assigned to her were the same age, or older, than she. (R. 104a, 535a: statement and admission no. 80; see R. 360-363a).

Rosetsky claims that she suffered a pre-termination adverse employment action when her supervisor assigned her to perform clerical tasks, such as correcting typographical and grammatical errors. Rosetsky did not like these tasks, which she considered too menial. She asserts that clerical duties were not expressly enumerated in her NBME role profile, and that her supervisor's assignment to her of these so-called "clerical" duties was evidence of the supervisor's age-based discriminatory animus. *See, Billet v. Cigna Corp.*, 940 F.2d 812, 816 (3rd Cir. 1991) (merely reciting that age was the reason for employment decision does not make it so.) Rosetsky

necessarily acknowledges that she was also assigned many non-clerical duties, including non-clerical data base tasks which she simply refused to undertake, because she believed her supervisor was not qualified to evaluate her performance (R. 354a).

Rosetsky's apparent dissatisfaction with her work assignments and with her workplace supervisor do not constitute an actionable discrimination claim, however. *See e.g.,* *Connors v. Chrysler Financial Corp.,* 160 F.3d 971, 976 (3rd Cir. 1998), citing *Gray v. York Newspapers, Inc.,* 957 F.2d 1070 (3rd Cir. 1992), (no guarantee of stress free work environment; discrimination laws not palliative for every workplace grievance); *Gray,* 957 F.2d at 1083 ("Every job has its frustrations, challenges and disappointments; these inhere in the nature of work.")

Rosetsky was forty-eight years old when she was hired by NBME. Her supervisor, Kathleen Holtzman was seven years older. Rosetsky says that Holtzman discriminated against her by assigning her tasks that were inconsistent with her superior educational attainments and not specifically set out in her NBME role profile as a Test Development Program Assistant. R. 230-232a. Rosetsky was hired in this position on December 19, 2005. The position was newly created and Rosetsky was the only employee with this job title. Previously, from September 27 to December 19, 2005,

Rosetsky had been employed by NBME as a temporary hourly employee with the job title Test Development Associate I. During the almost three months that she was employed as an Associate I, and while later employed as Test Development Program Assistant, Rosetsky was assigned both clerical and non-clerical duties. Significantly, Rosetsky did not complain about her assignments, her supervisor, or her role profile until October, 2006, when Rosetsky became dissatisfied and upset that her supervisor, Ms. Holtzman, had revised her work. (R. 254a, 316a).

At NBME, an employee's role profile is dynamic and is regarded as a "work in progress" rather than a static job description. (R. 225a). Although Rosetsky's NBME role profile does not specifically utilize the word "clerical" in describing her duties, the profile expressly refers to her responsibility for contacts and communications with editorial staff, noting that the purpose of her contacts in this area includes documentation and *support* needs. (R. 17a, 231a, *emphasis supplied*).

Rosetsky also admits that many of her co-workers, including co-workers both younger and older than she, performed clerical duties. (R. 420a). Although Rosetsky did not like or enjoy these clerical duties, which were performed by employees throughout the organization, she nonetheless agreed to do them. (R. 447a; "I'll do it if you want me to.") Rosetsky's real

complaint was that she was hired for, and had accepted, a job for which she believed herself to be over-qualified (see R. 478a).

Without question, Rosetsky became unhappy with her job, her assignments, her supervisor, and her lack of advancement. She has not demonstrated that any of these disappointments were the result of age discrimination, however. Rosetsky's dissatisfaction with Holtzman's supervision at NBME was not unlike her past experience in the workforce, where she had admittedly "strained" relations with other employers and supervisors (R. 156-157a, 164a, 406-407a, 461a). In fact, the evidence shows that Rosetsky lied on her NBME job application to disguise the reason that she left her prior employment. While she claimed that her prior employer had "eliminated" the position she held (R. 405a), that was not true. (R. 156a, 163a). Rather, she was terminated from her prior position at the end of an introductory period because she lacked the ability to work cooperatively and because her performance did not meet expectations. *Id.*

At NBME, Rosetsky viewed her accomplishments, her talent, and her educational attainments as far superior to those of her supervisor (R. 469a). She openly questioned her supervisor's skill and job performance; refused to perform her assigned tasks; refused to meet with her supervisor to discuss her work; complained to her co-workers although she was repeatedly told to

discuss such concerns with her supervisor or with Human Resources (R. 293a); and argued that she was given menial tasks not within her role profile. Yet, when she was assigned tasks that were admittedly within her role profile, she refused to do them (R. 354a, 458a, 470a).

An employee's receipt of job assignments that she doesn't like is not an adverse employment action. See *Gray v. York Newspapers, Inc.*, 957 F.2d at 1083. An adverse employment action must be material and significant. Inconvenience and a mere alteration of responsibilities, are not materially adverse and will not support a claim of discrimination. *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998); see *Weston v. Commonwealth of Pa. Dept. of Corrections*, 251 F3d 420 (3rd Cir. 2001). Rosetsky was not demoted, was not given a lesser title, and suffered no decrease in wages or benefits. Indeed, although Rosetsky was dissatisfied with the amount of her raise, she was scheduled to receive more money, not less. Nor was the assignment to her of clerical duties evidence of significantly diminished material responsibilities. Not only did Rosetsky agree to perform clerical duties, which others also performed, but she knew from the very beginning that her role in the organization was a supportive one. (R. 447a, 455a). Hence, she cannot claim that her role was changed "from a technical role to

a clerical role." Brief for Appellant at 22.  Rather, her role at all times included technical, clerical, and other supportive duties.

Rosetsky has not demonstrated that she was denied a promotion based on age discrimination.  First, Rosetsky acknowledged that she withdrew her applications for positions before she could even be interviewed.  (R. 254-255a, 260a, 431a).  Second, while she said that she had once sought the position previously occupied by Kieran Hussie, she admitted that she did not know if she had the knowledge necessary to take Hussie's place (R. 438a).  Indeed, she acknowledged that she did not have experience with a particular computer application ("Dream Weaver") but asserted that she "could have just picked that up." *Id.*    Finally, while Rosetsky asserts in her complaint that the position supposedly denied her based on age was ultimately filled by a younger person, she admitted she did not know if this was true. (R. 431a).

In sum, Rosetsky perceived herself as better educated and substantially more skilled than her supervisor, and more talented than co-workers whom she deemed less hard working and less deserving.  She eschewed the duties of her job in pursuit of tasks she preferred, presented her supervisor with ultimatums that invited her dismissal (R. 354a, 456-457a), and increasingly refused to do what she was asked to do, even when those assignments, by her own admission, were within her role profile. (R.

470a).   The evidence, viewed in the light most favorable to Rosetsky and taking into consideration her own testimony and admissions, shows that she was a disruptive, disgruntled and insubordinate employee.   There is, however, no evidence that she suffered an adverse employment decision based on her age.

## B. Appellant failed to show that the termination of her employment at NBME was retaliatory.

Rosetsky asserts that she was the victim of a retaliatory discharge. She has, however, failed to show that there was a causal link between her discharge, which became effective on December 1, 2007, and her complaints of age discrimination.   Rosetsky first contacted the NBME Human Resources Director, Barbara Davidson, on October 18, 2007, to complain that Ms. Holtzman, Rosetsky's supervisor in Test Development, had refused to utilize Rosetsky's edits, which Rosetsky believed to be far superior to Holtzman's own.   (R. 425-426a, 467a).   Rosetsky testified that she also raised the issue of age discrimination and complained to Davidson that she was not receiving assignments commensurate with her role profile and skills. (R. 477a).

In an e-mail dated October 26, 2008, Holtzman requested an update on a current database project, and asked Rosetsky to keep track of the time she worked on it.  Holtzman also assigned Rosetsky two additional database

projects, which were within Rosetsky's role profile and not clerical in nature (R. 280a). In e-mails on October 30th and October 31st, Holtzman again asked Rosetsky to keep track of her project time and provide Holtzman with a list each Friday. Holtzman explained that this was necessary so that Rosetsky's time could be properly charged to specific accounts and so that NBME could decide whether projects should be continued. (R. 283a). Rosetsky repeatedly refused to comply with these requests. (R. 283a, 285a, 287a, 289a, 292a, 302-303a).

Rosetsky complains in her brief that Holtzman's requests to keep track of her project time were intended only to harass and retaliate against her. She claims that it was impossible for her to honestly recreate time records "for the past four or five months." Brief for Appellant at 28. See R. 471a. That, however, is not what Holtzman requested. Rosetsky was asked by her supervisor on October 26 to keep time records on a daily basis. The fact that Rosetsky repeatedly failed, or refused, to account for her time, does not make the request ridiculous, impossible, or harassing. (R. 287a). Rosetsky simply refused to comply with her supervisor's reasonable request.

On November 16, 2006, Rosetsky, an NBME employee for slightly more than one year, sent an e-mail to Holtzman in which she expressed her concern that her ten years of total work experience and education were not

being taken into account and that others, younger than she, "were being hired into positions that were higher than Production Assistant." (R. 512a). Holtzman responded with the advice that Rosetsky should focus on performing her current job so that she could be considered a strong candidate for other roles. *Id.*

On November 22, 2006 Rosetsky sent an e-mail to Holtzman in which she expressly refused to perform her job, demanded a salary increase of ten thousand dollars ($10,000), and further demanded a change to "an information technology-type title." (R. 354a). On November 27, 2006, Davidson, the NBME Human Resources Director, responded to Rosetsky's ultimatum by advising her that the position she had demanded did not exist and would not be created for her. Davidson further informed her that inasmuch as Rosetsky had made it clear that she was not interested in performing the duties of her current position, she would be discharged effective December 1, 2007. (R. 518a).

Rosetsky asserts that the temporal proximity between her discrimination complaint and her subsequent discharge is itself sufficient to defeat summary judgment. Brief for Appellant at 27. While temporal proximity, if very close and "unusually suggestive" can in some cases create an inference of causality sufficient to establish a prima facie case of

retaliation, *Leboon v. Lancaster Jewish Community Center Assoc.*, 503 F.3d 217, 232-233 (3rd Cir. 2007), it does not do so here. Rather, the Court must consider the entire factual record, *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3rd Cir. 2000), including any intervening events between the protected activity of lodging a discrimination complaint and employee discharge. *Leboon*, 503 F3d at 232-233. The record here demonstrates that during the intervening period, Rosetsky became increasingly insubordinate.

There is no bright line rule as to what constitutes unduly suggestive temporal proximity. *Id.* The lower court, in construing the evidence most favorably to Plaintiff, found that Rosetsky complained to Human Resources on October 16 and to her supervisor on November 18.[1] She received notice of discharge on November 27, 2006, more than six weeks after her meeting with Human Resources and eleven days after she expressed her concern to Holtzman that unidentified persons younger than she were being hired into "higher" positions (R. 512a). In evaluating temporal proximity, however, this Court must consider that only five days before receiving her notice of discharge, Rosetsky sent an e-mail to her supervisor in which she refused to do her job, and presented an ultimatum demanding a substantial raise and a

---

[1] As NBME argued below, Rosetsky's complaints to Human Resources were triggered by Holtzman's edits of her work, and addressed fairness and personality issues, not age.

new job title "if you would like me to continue my innovative work." (R. 354a). The fact that Rosetsky considered her work valuable or innovative does not make it so, or make it imperative that NBME agree with her. See, *Billett v. Cigna Corp*, 940 F.2d at 825 (employer need not agree with employee's assessment of his performance).

Rosetsky's November 22 e-mail further taunted her supervisor and NBME that if they were to "replace me" they would not find someone at her salary. (R. 354a). In this intervening e-mail communication, Rosetsky, in fact, invited her dismissal. Given this record of Rosetsky's intervening ultimatums and insubordinate behavior, mere temporal proximity is not enough to establish a prima facie case of retaliation.

**C. Appellant has not pointed to any evidence or circumstance to demonstrate that the legitimate reasons for discharge advanced by NBME were pretextual.**

Under the *McDonnell-Douglas* analysis, if the employee establishes a prima facie case, the burden then shifts to the employer to present a non-discriminatory reason for the adverse action. Once that occurs, the burden shifts back to the employee to show that the reasons proffered by the employer were a mere pretext, and that the real motivation for the challenged employment action was discrimination. *Sarullo v. United States Postal Service*, 352 F.3rd 789, 800 (3rd Cir.2003) (employee's personal view

that the employer's non-discriminatory reason is a "sham" falls far short of establishing pretext); *Fuentes v. Perksie*, 32 F.3d 759.   Hence, even if Rosetsky had established a prima facie case of age discrimination and retaliation, in order to survive a motion for summary judgment, she was required to demonstrate by probative facts that NBME's non-discriminatory reasons for discharging her were a fabrication not worthy of belief by a reasonable factfinder. *Simpson v. Kay Jewelers*,  142 F.3d 639 (3rd Cir. 1998). Rosetsky has not met this burden.

Rosetsky was discharged after she repeatedly refused to perform the duties assigned to her by her supervisor, including duties that even Rosetsky admits were within her role profile (R. 458a, 470a).  She refused to keep track of her project time, and she verified by her own e-mail transmissions that she had no intention of doing so. (R. 282-283a).  Her conduct became so disruptive in the workplace that her co-workers complained. (R. 297-298a). Although her supervisor offered to meet with her to explain her decisions and assignments (R. 254a, 289-290a), Rosetsky instead engaged in an unremitting and unprofessional campaign to undermine a supervisor who simply did not share Rosetsky's high opinion of herself. (R. 352a, see also R. 246a, 278a). *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101 (3rd Cir. 1997).   There is, however, not a shred of evidence, other than

Rosetsky's gratuitous assertions that the supervisor lied when evaluating her (R. 432a), to show that Rosetsky suffered an adverse employment action provoked by age discrimination or retaliation on the part of NBME personnel. *See, Billett v. Cigna Corp.*, 940 F2d at 828 ("there was simply too much evidence of problems with [employee's] performance to make his claim of pretext plausible.")

NBME had numerous non-discriminatory reasons for discharging Rosetsky: she was insubordinate; she was disruptive; she denigrated her supervisor to others in an unrelenting, and wholly unprofessional, campaign to undermine the supervisor's authority (R. 278a, 297-298a); she refused to return NBME computer files when asked to do so; and she lied on her employment application.  Her insubordination reached new heights when she again refused to do her job, demanded more money, and effectively dared her employer to replace her.  (R. 354a).

Rosetsky argues that NBME's assertion that she was discharged for insubordination is "not worthy of credence." In support of that argument, Rosetsky asserts that insubordination could not have been the real reason for her discharge because that precise word was not used in her discharge notice. What the notice of discharge says is that Rosetsky is being discharged from her NBME employment because it is clear that she doesn't

want to do her job.  (R. 518a).  The described conduct and Rosetsky's long and petulant pattern of behaviors in refusing to do what she asked to do, constitute insubordination.  In her affidavit in support of summary judgment, NBME's Human Resources Director, Barbara Davidson, stated that Rosetsky was discharged for "insubordination" and "escalating unprofessional conduct" as evidenced by "her outright refusal to take instruction from her supervisor or perform her job responsibilities." (R. 340a).  The fact that Ms. Davidson, in crafting her discharge notice, did not also use the word "insubordination" to describe what was without question Rosetsky's insubordinate behavior, is of no moment.  (see R. 21a)

Rosetsky now asserts that she was not refusing to do her job, but was just trying to gain "clarification" of her role profile.  Brief for Appellant at 31. Rosetsky already had ample clarification of her role: she just didn't like some of her assignments.  Moreover, Rosetsky admitted in her deposition testimony that she refused to perform database tasks that she knew were within her role profile.  (R. 458a, 470a, see 354a).  Hence, this is not a situation where Rosetsky didn't know what the job required of her; she well knew what her role profile required her to do and refused to do it. Her explanation for these acts of insubordination was that her supervisor was not qualified to review her work. (R. 354a).  While Rosetsky may have believed

that to be the case, the law does not require NBME to agree with her.  *Billett v. Cigna Corp.*, 940 F2d at 825 (fact that employee disagrees with employer's evaluation of him does not prove pretext).  See also *Fuentes v. Perksie*, 32 F3d at 765 (to discredit employer's proffered reason, employee cannot simply show that the employer's decision was wrong; "the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, prudent, or competent.")

With respect to her repeated refusals to keep track of her time, Rosetsky asserts that she was not insubordinate because the task was "unreasonable and "impossible" and she can't be found insubordinate for refusing to do an impossible task.  The task of keeping track of the time she spent on various projects during the work day was not impossible, or even difficult, had Rosetsky done what she was asked to do, which was to keep contemporaneous time records.  Rosetsky, however, purposefully refused to keep contemporaneous records because she did not want to account for how she spent her time.  Indeed, she had previously been criticized for spending her time on projects that were of interest to her, but that her supervisor determined were not sufficiently beneficial to NBME.  (R. 287a, 336a). Thus, it was hardly unreasonable for NBME to ask Rosetsky to keep and submit time records so that the organization would know how to charge for

various projects, and so it could evaluate whether a particular project was worth the time that was expended on it. (R. 282-283a).

Rosetsky has pointed to no facts that support her claims that the proffered legitimate reasons for her discharge were false, contrived, or pretextual. Rosetsky's own e-mail correspondence and admissions show that her behaviors were insubordinate and were intended as such (R. 278a., 458a). Moreover, her insubordination became disruptive to her co-workers who tired of her workplace "crusade." (R. 297a). In addition, Rosetsky lied on her application for employment to disguise that she had been fired by her prior employer because of inferior performance, poor interpersonal skills, and her inability to work cooperatively with others. (R. 156a-164a). The lies on her job application thus provided an independent reason for discharge. (R. 339a).

For all these reasons, Rosetsky has failed to show that the reasons given for her discharge were pretextual, or that it was more likely than not that she was severed from her NBME employment because her employer was motivated by a discriminatory intent based on her age. Accordingly, the district court's grant of summary judgment must be affirmed.

## SCOPE AND STANDARD OF REVIEW OF DISTRICT COURT'S DISCOVERY ORDER

Matters of docket control and the conduct of discovery are committed to the sound discretion of the district court judge, whose decisions will not be overturned absent the clearest showing of abuse. *In Re Fine Paper Antitrust Litigation*, 685 F.2d 810 (3rd Cir. 1982); *Eli Lilly and Co., Inc. v. Generix* Drug Sales, Inc., 460 F.2d 1096 (3rd Cir. 1972).

## THE DISTRICT COURT JUDGE DID NOT ABUSE HIS DISCRETION WHEN HE DECLINED TO EXTEND THE DISCOVERY DEADLINE

Rosetsky complains that Judge Dalzell reversibly erred when he refused to grant her counsel's request for an extension of the discovery deadline. This is not a meritorious claim.

Matters of scheduling are uniquely within the discretion of the trial court to control its docket and dispatch the business of the court. This Court has repeatedly said that it will not interfere with the trial judge's discretion to set the timetable for discovery except in the clearest cases where the *court's* action made it impossible to obtain crucial evidence. *Eli Lilly and Co., v. Generix Drug*, 460 F.2d at 1096, 1105. It is incumbent on counsel who challenges the curtailment of discovery to put forth proof that more diligent discovery was not possible. *Id. Accord, Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 778 (3rd Cir. 2000); *In Re Fine Paper Antitrust Litigation*, 685 F.2d at 817-818.

Counsel in every case has a duty both to his client and to the court "to proceed with discovery with reasonable promptitude." *Eli Lilly*, 460 F.2d at 1105. Here, however, Rosetsky's counsel waited until the eve of the discovery deadline to notice any depositions at all. When he did so, on just one week's notice to counsel for NBME, he purported to notice five separate

depositions at two hour intervals, without a break, on the day before the court-ordered discovery deadline.  Moreover, Rosetsky's attorney, who also represents her in this appeal, noticed these depositions without even confirming the availability of opposing counsel, or of the witnesses he sought to depose.

Immediately upon receipt of these deposition notices, NBME's attorney advised Plaintiff's counsel that she was unavailable on the date he had unilaterally selected due to previously-scheduled depositions in another matter pending in the district court. (R. 67a).  She therefore asked Rosetsky's attorney to select another date within the discovery deadline.  Instead, Rosetsky's counsel, two days before the court-ordered discovery deadline, filed a motion to extend discovery. That motion, and Rosetsky's subsequent motion to compel depositions, were denied by the court because "[p]laintiff's counsel presents no explanation for why he noticed depositions so late in the ample time we allotted for discovery." (R. 83-84).

On September 7, 2007, Judge Dalzell held a Rule 16 conference after which he issued a case management order establishing a discovery deadline of November 16, 2007.  Rosetsky's counsel could have scheduled depositions at any time during that period of more than sixty days.  Instead, he waited until November 8, one week before the discovery deadline, and

then unilaterally noticed five depositions for a single day. Not only was this unreasonable notice to opposing counsel and to the deponents, but he offered no explanation as to why the depositions had not been scheduled earlier, or why they had to be scheduled on the same day.

From the outset, Judge Dalzell made it clear that he was not inclined to grant any discovery extensions in this case. His case management order provides, in capital letters, that the parties shall "COMPLETE" discovery by November 16, 2007. (R. 45a). Further, Judge Dalzell, in his published procedures, which are available on the district court's website, provides notice to all counsel that he grants discovery extensions sparingly and only for "weighty cause." (http://www.paed.uscourts.gov/documents/procedures/ dalpol1.pdf). Here, Judge Dalzell, in managing his docket, determined that the matter was not complicated and that discovery could, and should, be completed by November 16. Rosetsky's counsel has not shown why he could not complete depositions within that time period. Accordingly, he has failed to meet the high burden of proof that this court requires to interfere with the trial court's well settled prerogative to manage its docket. *Eli Lilly*, 460 F.2d at 1105.

Rosetsky has failed to demonstrate actual or substantial prejudice. While she tentatively argues that additional depositions could have produced

even more evidence "that might have assisted her in prosecuting her case", she nonetheless asserts that the evidence already available to her was more than sufficient. Brief for Appellant at 39. Rosetsky's counsel served interrogatories and requests for production of documents. NBME responded to these requests by providing discovery including the e-mail records of Rosetsky and numerous other NBME employees. By conceding that the evidence available was more than sufficient, Rosetsky's counsel acknowledges that the depositions were not necessary.

There is no basis for this Court to interfere with or reverse the district court's denial of Rosetsky's request to extend the reasonable discovery deadline that was set by the court at the time of the pre-trial conference, and that was well known to all counsel. Having set a discovery deadline consistent with his assessment of the complexity of the case and the court's responsibility to control its docket, the trial judge reasonably expected, and properly required, the parties to adhere to it.

## SCOPE AND STANDARD OF REVIEW REGARDING APPELLANT'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Review on the issue of Appellant's failure to exhaust her administrative remedies under the Pennsylvania Human Relations Act is plenary. *Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465 (3rd Cir. 2001).

**APPELLANT'S CLAIMS UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT MUST BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.**

Under the Pennsylvania Human Relations Act (PHRA), 43 P.S. §962 (c ), the Pennsylvania Human Relations Commission (PHRC) has exclusive jurisdiction of administrative claims for one year. A party must wait for the conclusion of this one year period before bringing a PHRA claim in any court. *Clay v. Advanced Computer Applications, Inc.* 559 A.2d 917 (Pa. 1989). See, *Burgh v. Borough Council of Montrose*, 251 F.3d at 476 (PHRC has exclusive jurisdiction for one year after which PHRA plaintiff can forego the administrative process in favor of litigation); see also, *Lee v. City of Philadelphia*, 2008 U.S. Dist. Lexis 52820 (E.D. Pa. 2008); *Roadcloud v. Pa. Bd. Probation & Parole*, 2006 U.S. Dist. Lexis 51246 (E.D. Pa. 2006). Moreover, the filing of an EEOC complaint is irrelevant to any limitations period under the PHRA. *Burgh,* 251 F.3d at 475.

Rosetsky's administrative complaint was cross-filed with the PHRC and EEOC on December 1, 2006. With regard to her state law claims, the PHRC had exclusive jurisdiction until December 1, 2007, at which time she could bring her claims under the PHRA in court. When she prematurely raised her PHRA claims in her complaint in federal court on August 2, 2007, she had not exhausted her state administrative remedies. In thus failing to

exhaust her administrative remedies under Pennsylvania law, she effectively waived her PHRA claims in favor of her claims under the ADEA. Hence, her state law claims under the PHRA must be dismissed.

# CONCLUSION

Wherefore, for the foregoing reasons, it is respectfully requested that this Court affirm the judgment below.

Respectfully submitted,
**TROIANI/KIVITZ, LLP**

/s/ Bebe H. Kivitz
Bebe H. Kivitz, Esquire
Dolores M. Troiani, Esquire
Attorneys for Appellee,
National Board of Medical Examiners of the
United States of America, Inc.

**Certificate of Compliance Pursuant to Rule 32(7) and LAR 31.1 ( c)**

I, Bebe H. Kivitz, a member of good standing of the Bar of the Third Circuit Court of Appeals, hereby certify that the forgoing Brief contains 7,841 words, not including the corporate disclosure statement, table of contents, table of authorities, and certificates of counsel. This word count was established pursuant to a word processing system count.

I further certify pursuant to LAR 31.1( c) that the text of the electronic brief is identical to the text in the paper copies and that the virus protection program Norton Internet Security has been run on this file and that no virus has been detected.

By: <u>/s/ Bebe H. Kivitz</u>
        Bebe H. Kivitz

## Certificate of Bar Membership

Pursuant to Third Circuit Local Appellate Rule 46.1(e), I hereby certify that

I am a member in good standing of the Bar of the Third Circuit Court of Appeals.


By: /s/ Bebe H. Kivitz
       Bebe H. Kivitz

## CERTIFICATE OF SERVICE

I do hereby certify that on August 29, 2008, I served by first class mail two (2) true and correct copies of this Brief for Appellee, National Board of Medical Examiners, upon the following:

> Timothy M. Kolman, Esquire
> Timothy M. Kolman & Associates
> 225 North Flowers Mill Road
> Langhorne, PA 19047

I also certify that on August 29, 2008, ten (10) true and correct copies of this Brief for Appellee, National Board of Medical Examiners, were hand delivered to the Office of the Clerk, United States Court of Appeals for the Third Circuit, 21400 United States Courthouse, 601 Market Street, Philadelphia, PA 19106-1790, the same day that Appellee's E-Brief was filed electronically and is available for viewing and downloading from the ECF system.


Date:  August 29, 2008

/s/ Bebe H. Kivitz
Bebe H. Kivitz